## CURTIS, Appellant, v. SEXTON.

### Division One, February 22, 1907.

1. **CONTRACT: Purchase of Land: Agreement to Repurchase: Partners: No Deed: Fault of Sellers: Pleading: Cause of Action.** Where defendant's partner in trade, dealing in real estate, entered into contract with plaintiff by which plaintiff agreed to purchase land from the partner, and by a separate contract of even date written by defendant and signed by him in the firm name the partners agreed to repurchase the land on a certain date for the agreed purchase price and ten per cent interest, and plaintiff made the payments according to the contract, defendant, when sued for a return of the money and interest, cannot defeat the suit by a showing that no deed was ever given to plaintiff, for if none was, it was the fault of defendant and his partner. Nor does the petition, which sets out the contracts *in haec verba*, fail to state a cause of action because it does not show that a deed of the kind called for by the contract was given to plaintiff.

2. **———: ———: ———: Performance: Failure to Pay Last Installment.** Where the seller agreed to repurchase at a named price on the day the last installment of the purchase price the buyer agreed to pay was due, a failure by the buyer, who had already demanded a repurchase by the seller, to pay that installment, will not defeat his right to recover for a breach of the contract.

3. **———: ———: ———: ———: Payment of Mortgage.** By the contract of purchase five installments of the purchase money were to be applied to the payment of an existing incumbrance. under which the land was subsequently sold. *Held*, that it was no fault of plaintiff, who paid the installments to the defendant seller, in a suit for damages for a breach of his contract to repurchase, that the installments were not applied on the incumbrance.

4. **———: ———: ———: Inability to Reconvey.** Where, in plaintiff's suit for damages for a breach of a contract to repurchase land sold him by defendant, plaintiff's inability to reconvey, because of a foreclosure of an incumbrance existing on the land at the time of the purchase, made by defendant and his associates, is the fault of defendant, plaintiff cannot be defeated because of his inability to reconvey.

5. ———: ———: ———: **Limitations: Ten Years.**  Where plaintiff's suit is founded on a breach of an express written agreement to pay to him the amounts he paid on account of his purchase of land and interest thereon, and the only necessity for going beyond the writing to make out his case is, to show the performance of the contract to purchase on his part and defendant's breach of the contract to repurchase, the action is not barred by the five-year Statute of Limitation, but only the ten-year section of the statute applies.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED AND REMANDED.

*R. F. Porter* for appellant.

(1)  Plaintiff entered into a binding valid contract with Bracking who was acting for and on behalf of the firm of Sexton & Bracking in signing said contract, the firm of Sexton & Bracking being the real parties in interest, and showed his final acceptance of said contract by making the cash payment provided in said contract when satisfied with title, etc., and this was a purchase of the property in compliance with the requirements in that respect of the contract sued on. Meyers v. Schuchmann, 182 Mo. 159; Greffet v. Willman, 114 Mo. 106; Gwinnup v. Sibert, 106 Mo. App. 709; Perrin v. Kimberlin, 110 Mo. App. 66; Hayden v. Grillo, 35 Mo. App. 647; Love v. Owens, 31 Mo. App. 501; Christianson v. Wooley, 41 Mo. App. 53; Strude v. Schaff, 36 Mo. App. 15; Lumber Co. v. Clark, 172 Mo. 588; Rice v. Mayo, 107 Mass. 552; Ward v. Cobb, 148 Mass. 518; Roche v. Smith, 176 Mass. 595; Knapp v. Wallace, 41 N. Y. 477; Dayton v. Nell, 43 Minn. 246; Eaton v. Richeri, 83 Cal. 185; Bradish v. Yocum, 130 Ill. 386; Brewer v. Herbert, 30 Md. 301; Loomis v. Davenport, 17 Fed. 301; Brisco v. Minah, 82 Fed. 952; Railroad v. Branch, 59 Ala. 152; Lunley v. Robinson, 26 Mo. 364; Harvey v. Morris, 63 Mo. 475; Brown v. Barrett, 75 Mo. 275; Wilson v. Ma-

són, 158 Ill. 304; Springer v. Orr, 82 Ill. App. 558; Burns v. Oliphant, 78 Iowa 456; Potvin v. Curran, 13 Neb. 306; Conkling v. Krakner, 70 Texas 735; Dunn v. Yadish, 10 Okla. 388; Hipple v. Land, 189 Pa. St. 472. (2) The contract of sale, being signed by Bracking for the firm, they being the real parties in interest, inured to their benefit and was sufficient consideration for the contract of the firm. Besides, that contract was under seal and imports a consideration. Randolph v. Wheeler, 182 Mo. 145. (3) Even though it be held that the purchase was not made until a deed was made, the deed made to plaintiff conveying him a one-eighth interest would satisfy this requirement, as the conveyance of a greater interest includes the less, and the reconveyance of the one-sixteenth to their wives subject to incumbrances left the title to the one-sixteenth in him and accomplished practically the same results as far as the title was concerned as if a straight conveyance of one-sixteenth the interest had been made, and the court will look through the shadow to the substance and construe it as a conveyance of a one-sixteenth interest. Besides, Sexton and Bracking were charged with making the conveyance to carry out the contract, and they will not be allowed to take advantage of their own wrong to defeat the contract. Brown v. Barrett, 75 Mo. 275; Viaux v. Old South Church, 133 Mass. 1. (4) The dissolution of the partnership did not affect existing obligations, and notice, tender or demand on one member of the firm would be binding on both, and Bracking's letters in reference to such in connection with this contract are competent evidence against Sexton, the other partner. Abbott, Trial Practice, p. 272; 1 Bates on Partnership, sec. 707; Cady v. Shepherd, 11 Pick. 400; Bank v. Rilly, 52 Mo. 207; Bank v. Atherman, 91 Mo. 191; Coudrey v. Gilham, 60 Mo. 92; White v. Kerney, 2 La. Ann. 639; Hubbard v. Matthews, 54 N. Y. 43; Coster v. Thomason, 19 Ala. 717; Mann v.

Locke, 11 N. H. 246. (5) The covenants contained in the contracts were independent and not dependent, and even if it should be held that defendant did not make the last payment called for in his contract in compliance with its terms this would not prevent his recovery, as they had their action to enforce it or could set it up as a counterclaim. Overton v. Curd, 8 Mo. 420; Thompson v. Crutcher, 26 Mo. 319; Turner v. Melber, 59 Mo. 536; Mockwood v. Railroad, 65 Mo. 233; Smith v. Crews, 2 Mo. App. 269; Pfeninghausen v. Sherer, 65 Mo. App. 348; Burris v. Shrewsberry, 55 Mo. App. 381; Seed Co. v. Walt, 94 Mo. App. 76. (6) Time is not the essence of a contract for real estate in the absence of any express provision, as is the case in this contract, and a tender or offer to convey within a reasonable time is sufficient. Bales v. Roberts, 189 Mo. 49; Marshall v. Waas, 8 Fed. 854. (7) Where it is obvious from the statements of the other party that he will not fulfill his contract, as in this case, there is no necessity for a tender, although a tender was made in this case. Mastin v. Grimes, 88 Mo. 478; Walker v. Cooper, 97 Mo. App. 441.

*A. F. Evans* for respondent.

(1) The petition does not state a cause of action. It does not allege that plaintiff ever, at any time, had any title to the land. Davis v. Watson, 89 Mo. App. 15; Birge v. Bock, 24 Mo. App. 330. (2) It appears on the face of the petition that plaintiff did not have title to any interest in the land, and that he proposed to convey it as of October 6, 1890, by special warranty deed. The contract between Bracking and plaintiff stipulated: "If, upon examination, it is found that the seller has a good title, in fee, to said property, he is to execute and deliver to the buyer, or his order, a general warranty deed thereto, properly executed." The contract did not pass the title to Curtis and the

petition does not allege that the deed was ever deliv-
ered to Curtis. Birge v. Bock, 44 Mo. App. 69; Herry-
ford v. Turner, 67 Mo. 296; Davis v. Watson, 89 Mo.
App. 15; Carter v. Alexander, 71 Mo. 585. Curtis's
failure to pay the encumbrance which he assumed was
in legal effect the same as if he had placed the encum-
brance on the land, and then offered to convey subject
to it, instead of satisfying it. Davis v. Watson, supra.
(3) It appeared on the face of the petition that plain-
tiff's remedy, if any he had, was by suit in equity for
specific performance of the contracts, and it clearly ap-
peared on the face of the petition, and from the evi-
dence, that he was not entitled to a decree for specific
performance. Tenney v. Turner, 111 Mo. App. 597;
Maloney v. Real Estate B. & L. Assn., 57 Mo. App. 384.
(4) It appeared on the face of the petition, and was
shown conclusively by the evidence, that plaintiff had
not performed the contract on his part, and that he
committed several breaches of it before his right ma-
tured to ask defendant to perform. He assumed and
agreed to pay one-sixteenth of the indebtedness secured
by the deeds of trust on Madison Square, whereby those
debts became his; he, the principal debtor, and his ven-
dor his surety. Bank v. Pettit, 85 Mo. App. 499; Heim
v. Vogel, 69 Mo. 529; Fitzgerald v. Barker, 85 Mo. 13;
Winn v. Inv. Co., 125 Mo. 528. He failed to pay those
debts, and because of such failure, had lost all title to
the land. MacLeod v. Snider, 110 Mo. 298; Wellman,
Admr., v. Dismukes, 42 Mo. 101; Meyer v. Christopher,
176 Mo. 580; Sick v. Life Ins. Co., 79 Mo. App. 609;
Billups v. Daggs, 38 Mo. App. 367; Craycroft v. Wal-
ker & Co., 26 Mo. App. 469; Cress v. Blodgett, 64 Mo.
449. (5) Time is always the essence of a unilateral
contract. It was conclusively shown by the evidence
that Curtis had not performed, or offered to perform,
on October 6, 1890, the day fixed by the contract signed
by Sexton & Bracking, for its performance, and by rea-

son thereof lost the right to thereafter claim the benefit of it. Glass v. Rowe, 103 Mo. 513; Hollmann v. Conlon, 143 Mo. 369; Cockrell v. Bopp, 106 Mo. App. 555. Under the express provisions of the deed of trust under which Curtis permitted the land to be sold, he had the right to demand and receive a release of his one-sixteenth interest, and to select the lots so to be released, by paying $1,000 on account of the encumbrance. If he had complied with his contract, he could have had no diffiuclty in making out a good title October 6, 1890. To permit him to recover in this case would be to allow him to profit by his own wrong. (6) It clearly appeared that the contracts sued on do not constitute a writing for the payment of money or property, within the meaning of section 4272, Revised Statutes 1899; that plaintiff's cause of action, if any he had, accrued October 6, 1890, and was barred by the five-year Statute of Limitations. R. S. 1889, sec. 4273; Finney v. Brant, 19 Mo. 42; Whisler v. Bragg, 31 Mo. 124; Kauz v. Great Council of I. O. of R. M., 13 Mo. App. 341; Garesche v. Chouteau, 37 Mo. 413; Brady v. St. Joseph, 84 Mo. App. 399; Menefee v. Arnold, 51 Mo. 536.

VALLIANT, P. J.—Plaintiff sues to recover money which he claims to be due him under a written contract between himself and a firm of which the defendant was a member. Plaintiff does not plead the contract by its legal effect but sets it out *in haec verba* and alleges that defendant has broken it.

From the documents copied into the petition we gather that the contract which plaintiff attempted to plead is this: January 5, 1888, plaintiff entered into a written contract with one Bracking whereby he agreed to purchase from Bracking an undivided one-sixteenth interest in a certain tract of land called Madison Square in Kansas City, for the sum of $2,727.35, to be paid $100 down, $900 when the deed

was delivered, and $1,727.35 in five installments on dates specified, the latter to be applied to the payment of one-sixteenth of an existing incumbrance on the whole tract. There were other details specified in the contract which for the purpose of this appeal are not necessary to mention. It was specified in the contract that it was made subject to a written contract of even date therewith between the plaintiff and the firm of Sexton & Bracking, which firm was composed of the defendant and the Bracking first above named. By that contract which is also copied into the petition, Sexton and Bracking agreed, in consideration of the plaintiff having made the purchase of the one-sixteenth interest in the land from them, that they would purchase it back from him October 6, 1890, if he should so desire and request, at the price he paid for the same, together with interest at ten per cent per annum from the date of the purchase.

The petition avers that plaintiff performed his part of the contract, made all the payments required, amounting to $2,878.35, plus $131.28 paid for taxes; that these payments were made to Sexton & Bracking; that prior to his contract of purchase of the one-sixteenth interest there was an incumbrance on the whole tract in the shape of a deed of trust to secure an indebtedness of Sexton & Bracking and plaintiff assumed to pay one-sixteenth of that debt and did pay the money for that purpose to Sexton & Bracking to be by them so applied; that prior to October 6, 1890, plaintiff notified Sexton & Bracking that he desired them to repurchase the interest in the land and on October 6, 1890, and several times thereafter, he requested them to repurchase the land as they agreed to do and offered to make them a deed, but they refused to purchase and refused to pay the plaintiff the money he had paid and interest as per agreement, or any part thereof; that afterwards, on January 6, 1891, the above-mentioned

deed of trust was foreclosed and plaintiff's interest in the land was sold with the rest of it and passed to a stranger at the trustee's sale.

The prayer of the petition is for judgment for the amount of the payments made which, with interest thereon as stipulated in the contract, amounted to over $4,500.

Defendant filed an answer containing, first, a plea of the five-year Statute of Limitations; second, a general denial; third, that the purchase of the land by plaintiff from Bracking was a matter entirely between those two with which defendant Sexton had nothing to do, that defendant's attitude was that of guarantor, that the contract of purchase between plaintiff and Bracking on which defendant's contract of guaranty was founded, was another contract between those parties, not the one set out in the petition, and it was never consummated, and, fourth, that defendant has fully complied with his contract.

The reply reiterated that defendant was interested in the land which Bracking agreed to sell to plaintiff and the transaction was in behalf of the firm of Sexton & Bracking and plaintiff was induced to make the purchase by the agreement to repurchase.

When the trial began the defendant objected to any evidence being received on the part of the plaintiff for several reasons, which, taken together, amounted to the assertion that the petition showed on its face that the plaintiff had no cause of action. The objection was overruled and exception reserved.

The testimony in behalf of plaintiff was to the effect as follows:

Defendant Sexton, and Bracking, were partners in trade dealing in real estate in Kansas City; the plaintiff resided in Cincinnati. He had had other business transactions with this firm and trusted the management of this transaction to them. The deeds in evidence

showed the title to the tract called Madison Square as follows: October 6, 1887, one Rhodes and wife by deed conveyed the land to Ophelia Spofford, Samuel E. Sexton, the defendant, and Frank B. Bracking, in the proportion of an undivided half to Spofford, an undivided fourth to Sexton, and an undivided fourth to Bracking. On the same day those three executed a deed of trust on the land to secure their three notes for $5,439 each, due in one, two and three years.

November 3, 1887, Sexton conveyed a one-fourth interest to one Chapman. March 19, 1888, Bracking conveyed a one-eighth interest to one Speasmaker. August 12, 1888, Bracking conveyed a one-eighth interest to plaintiff Curtis. June 13, 1889, Curtis conveyed a one thirty-second interest to Sexton's wife, and on same day a one thirty-second interest to Bracking's wife, leaving one-sixteenth in himself.

January 6, 1891, the whole tract was sold under the deed of trust to a stranger.

In the deed from Bracking to plaintiff conveying the one-eighth interest there was a clause to the effect that the grantee assumed the payment of one-eighth of the incumbrance. The plaintiff testified that he knew nothing of that deed until several months after it had been made and put on the record, that it was never delivered to him and the first he knew of it was when Sexton told him about it several months after it had been recorded, that he then asked Sexton why it was done; Sexton told him that Bracking would explain it, and when he went to Bracking for explanation the latter told him they did it for the purpose of having plaintiff convey a one thirty-second interest to the wife of each of them, and that he did so.

Plaintiff made all the payments called for by his contract of purchase except the last installment due October 6, 1890, which was the date on which Sexton & Bracking had agreed to repurchase the one-sixteenth

interest, and as plaintiff had previous to that date and on that date notified them that he desired them to so repurchase and requested them to do so and they refused, he just credited that payment against the amount he estimated to be due him from them.

It appeared in the evidence from a part of the deposition of defendant that plaintiff read in evidence, that in January, 1888, shortly after the execution of the two contracts above named, the partnership was dissolved, Sexton went into the building business, and Bracking continued in the real estate business, but plaintiff testified that if there was ever any dissolution of the firm of Sexton & Bracking he had no notice of it and did not know it, although he did know that Sexton was engaged in the building business.

All the payments made by plaintiff, the $100, the $900, and the installments applicable to the incumbrance, were by check payable to Sexton & Bracking and were collected by Sexton, except the one paid October 6, 1889, in reference to which the plaintiff testified that he paid it to Bracking at the request of Sexton, and that Bracking instead of applying it on the incumbrance converted it to his own use. There was a clause in the deed of trust under which plaintiff could have paid one-sixteenth of the incumbrance and obtained a release of his interest, but instead of doing so in person he sent the money to Sexton & Bracking to be so applied, and if it was diverted they did it.

Plaintiff testified that defendant told him that the interest held by Bracking was so held in common for both, that their interests were identical.

At the close of plaintiff's evidence the court at the request of the defendant gave an instruction to the effect that the plaintiff was not entitled to recover, whereupon plaintiff took a nonsuit with leave, and his motion to set the same aside having been overruled, he brings the cause here for review.

Defendant contends that the petition does not state a cause of action.

The supposed defects in the petition are that it does not show that plaintiff had acquired the title to the land which his contract with Bracking called for, no deed for that interest having been given him, and that it shows that he had not performed his part of the contract.

The petition does state, and the evidence tends to prove, that the title to this one-sixteenth interest vested in Bracking and was held by him for the benefit of himself and the defendant, that it was therefore under the control of defendant and his partner, that plaintiff paid the firm the price he agreed to pay and therefore if the title that ought to have been conveyed to plaintiff was not conveyed to him, defendant and his partner were responsible for the failure. The contract to repurchase was written and signed by defendant himself in the firm name; it starts out by referring to the contract of even date whereby plaintiff agreed to purchase from Bracking the one-sixteenth interest in question in these words: "In consideration of W. Espy Curtis purchasing *from us* one-sixteenth interest in Madison Square," etc. "*We* guarantee and promise to purchase it back from him Oct. 6th, 1890," etc. It is as express an acknowledgment that the transaction both ways was a firm transaction as could be. If after plaintiff had made the payments he agreed to make, the title was withheld by one of the firm, the defendant was in no condition to complain of that fact; if there was anything wrong it was his own and his partner's wrong. The evidence shows that instead of making a deed to the plaintiff for one-sixteenth, Sexton and Bracking for their purpose and without the knowledge or consent of the plaintiff caused the deed to be made for one-eighth and so recorded, their purpose being to use the plaintiff as a medium for the transfer

of title to their wives, and when this purpose was afterwards disclosed to the plaintiff he readily complied with their request and made the transfers without consideration. Defendant is in no condition, either in a court of law or a court of equity, to take any advantage of that variation in the contract. The transaction also bears out the claim of the plaintiff that his relations with the firm were such that he had implicit confidence in them.

As to the alleged failure of plaintiff to perform the contract on his part, the only payment he failed to make was the one due on the day the defendant's obligation to repurchase was due, which obligation defendant had refused to perform. If defendant had been willing and able to perform his part of the obligation and if the last installment due that day had been paid to him he would have immediately returned it to the plaintiff with the other amounts and interests as agreed. There is therefore nothing in that point.

It is also contended that it appears on the face of the petition that the plaintiff failed to pay his part of the incumbrance on the land. The petition does show that in January, 1891, after defendant had refused to repurchase, the land was sold under the deed of trust, but it also shows that plaintiff had paid to defendant and his partner the several installments he agreed to pay for his part of the incumbrance; if therefore it was not so paid it was defendant's fault. All of these installments except one were paid to Sexton himself and that one was paid to Bracking at Sexton's request. How can defendant say that it was the plaintiff's fault if those payments were not properly applied?

It is also said that the plaintiff's remedy, if any, was in equity for a specific performance and that from the evidence he was not entitled to a specific performance. The proposition is that since the plaintiff cannot now make a valid conveyance he is in no position to

perform his part of the contract and therefore not entitled to demand performance on the part of defendant. But if the plaintiff's testimony is true his inability to convey a valid title is the fault of defendant. The debt which the deed of trust was given to secure was the personal debt of defendant and his partner and Spofford, and whilst it is true plaintiff assumed to pay his one-sixteenth of the debt (less the interest), it is also true that he gave the money to defendant and his partner with which to make that payment. Before and on October 6, 1890, plaintiff asked defendant to prepare such a deed as he desired and offered to execute it, but defendant declined to do so, and afterwards before the sale plaintiff made a deed and tendered it to the defendant and his partner but they declined to receive it. The point is made that the deed tendered was one of special, not general, warranty. It was a warranty of the title against the claims of all persons claiming under or through the plaintiff and it amounted to the plaintiff's giving back to the defendant and his partner the same title they had given him and which they had agreed to repurchase; if there was any diminution or depreciation of the same, it was the fault of defendant himself and his partner.

It is insisted that the evidence shows that the partnership of Sexton & Bracking was dissolved in January, 1888. There was evidence to that effect, but there was also evidence to the effect that plaintiff had no notice of the dissolution, and the evidence showed that all the payments which plaintiff made after January, 1888, were by check payable to Sexton & Bracking, were endorsed with the firm name by Sexton, and collected by him, except the one paid October 6th, 1889, and that was paid to Bracking at the request of Sexton. If that testimony is true it is no defense to the plaintiff's suit for Sexton to say that the partnership was dissolved in January, 1888.

Defendant also contends that the cause of action falls within the five-year Statute of Limitations and is therefore barred. The argument is that when evidence beyond the written document must be resorted to in order to make out the case it is not an action upon "a writing . . . for the payment of money or property" within the meaning of section 4272, Revised Statutes 1899 (which is the ten-year limitation), and several cases are cited as supporting that argument, among them Menefee v. Arnold, 51 Mo. 536, Brady v. St. Joseph, 84 Mo. App. 399, and others. But that is a misconception of those cases; they only mean to say that where the promise or agreement to pay on which the action is based is not found in express terms or by fair implication in the writing, but the cause of action arises out of facts collateral to the instrument, it does not fall within the provision of that section of the Statute of Limitations.

In the case at bar there is an express agreement to pay the amounts the plaintiff paid on account of his purchase and interest thereon, the only necessity for going beyond the paper writing to make out the case is to show the performance of the contract on the part of the plaintiff and the breach on the part of the defendant. The action is founded on the written contract and falls within the ten-year section of the Statute of Limitations.

The court erred in giving the instruction in the nature of a demurrer to the evidence. The judgment is reversed and the cause remanded for a new trial.

All concur, except *Woodson, J.,* not sitting.