JESSE JONES, RESPONDENT, v. McGINLEY LAND COMPANY, A CORPO-
RATION, APPELLANT.—74 S. W. (2d) 853.

Springfield Court of Appeals.   August 24, 1934.

Rehearing denied October 3, 1934.

*McKay & Peal* for appellant.

*Ward & Reeves* for respondent.

ALLEN, P. J.—The respondent's petition alleges in substance:

That on the 22nd day of July, 1923, the respondent and appellant entered into a written contract by which respondent purchased from the appellant certain real estate in Pemiscot County, Missouri, to-wit:

The NE $\frac{1}{4}$ of the SW$\frac{1}{4}$ of Section 14, Township 20, N. Range 11, E.

That plaintiff (respondent) made a cash payment of $25 at the time of the execution of the contract, which provided for an additional payment of $200 annually, commencing on the 1st day of January, 1926, and $200 on the 1st day of January of each year, to and including January 1, 1934, and on January 1, 1935, to pay $1817; all payments were without interest, until due, and constituted the purchase price of said land. In addition thereto respondent was to pay all general and special taxes accruing subsequent to January 1, 1925, and also to do a reasonable amount of development work on said property, and to have at least one-third of same in cultivation, before delivery of deed; providing that when respondent had paid the annual installments to and including the one due January 1, 1928, and otherwise complied with his contract, the appellant agreed to execute and deliver to respondent a deed to said land, and an abstract of title.

Respondent executed and delivered to appellant his promissory notes for the annual payments, as above alleged, with interest from their maturity, which were to be secured by a first mortgage or deed of trust on said land. Said contract was executed by respondent and appellant.

That respondent entered upon the land; improved the same; paid all the taxes thereon, and made all the payments required on or before the dates they became due, up to and including January 1, 1928; and charges that the appellant failed and refused to deliver to respondent a deed to said property, although respondent demanded the same.

Respondent further alleged that by reason of the appellant's breach of said contract, he had been damaged as follows:

(Enumerating the number of items, amounting in all to $3,031.93)

That by reason of appellant's failure to convey the title of the land aforesaid, to respondent and on account of the breach of the contract by appellant that the appellant became and was indebted to respondent in the sum of $3,031.93.

The appellant, by its answer, denied that it sold to respondent the land mentioned, but admitted that should respondent make all payments provided by said contract to be made by him, on January 1, 1926, January 1, 1927, and January 1, 1928; and credit respondent on the purchase price of said land for all sums so paid by him, and take a deed of trust back on the said land securing the balance of the unpaid rentals, but appellant claimed that respondent failed to keep and perform his said contract, and failed and refused to

make said payments for said years, as were provided to be made by him.

Appellant denied that it breached its contract with respondent, in failing and refusing to make respondent a deed to said land; and alleged that it refused to make said deed for the reason that respondent breached his contract with the appellant and failed to make the payments provided in said contract to be paid by respondent before being entitled to such deed, under the terms of said contract, and

Further answering, denied that respondent was forced to return said land to the appellant, but alleges that respondent voluntarily and of his own volition, moved off of said land.

Appellant further answering, stated that for the year previous to the removal of respondent from said land, he and appellant had a settlement of the rent and that appellant permitted respondent to settle the rent for said year on a basis of one-fourth of the cotton and one-third of the corn grown by him, for said rent for said year.

Further answering, appellant alleged that on the 1st day of January, 1928, respondent had full knowledge of the alleged breach of the contract and thereafter continued under the terms of the contract to occupy said land as tenant of the appellant, for the year of 1928 and 1929, and paid rent to appellant on said land, and that by reason thereof the respondent waived the breach of said contract so alleged in his petition, and that he is now estopped to prosecute this action of plaintiff (respondent) or recover on account of the alleged breach thereof.

The verdict of the jury was as follows:

"We, the jury, in the above entitled cause, find the issues herein for the plaintiff and against the defendant and assess plaintiff's damages, in the sum of Two Thousand ($2,000) Dollars.

"HARRY CUNNINGHAM,
"Foreman."

The facts are in substance, as follows:

By bond for title to real estate the McGinley Land Company, first party, leased to Jesse Jones (colored) second party, the NE ¼ of the SW ¼ of Section 14, Township 20 N of Range 11 East of the fifth P. M., in said Pemiscot County, Missouri.

Jesse Jones, second party, agreed to pay the McGinley Land Company, first party $25 cash, upon the execution of said instrument. The substance of said instrument, pertinent to the issues in this case, is as follows:

Second party agrees to pay first party:

$200.00 due January 1, 1926
$200.00 due January 1, 1927
$200.00 due January 1, 1928
$200.00 due January 1, 1929
$200.00 due January 1, 1930
$200.00 due January 1, 1931

$200.00 due January 1, 1932
$200.00 due January 1, 1933
$200.00 due January 1, 1934
$1817.09 due January 1, 1935.

The cash of $25, together with the payment of $200 due January 1, 1926, was for rental for the year 1925 and the two payments of $200 each, due January 1, 1927, and January 1, 1928, were each for the rental on said land for the next previous year, and in addition to such payments Jones, second party, also agreed as additional rental, to pay all the taxes, general and special, on said land, at least ten days before they should. become delinquent, and to pay all claims against said land which could be lawfully asserted as such and in addition to such provision second party agreed to do a reasonable amount of development work each year, before demanding a deed to said land, so that before the time of demanding such deed, at least one-third of said property should be cleared for cultivation and under fence (all of which provisions were by second party duly performed) and the said contract further provides as follows:

That ''In event of default by said party of the second part in the prompt payment of any of the installments of rent above specified for a period of sixty days after same becomes due and payable, or in the event of his default in fully complying with any other agreement on his part hereinbefore contained for a period of sixty days, then the first party may, at his option, declare this contract terminated and canceled and retain all amounts previously paid thereunder as liquidated damages and rent, in which event it is agreed that the title to said property, including all improvements then located thereon, shall become vested in fee simple in first party free from any claim, interest, lien or right of the said party of the second part or any one claiming under him, and without any act, release or conveyance on the part of the said party of the second part.

If, however, said party of the second part shall promptly pay the rent installments due on the 1st day of January, 1926, and on the 1st day of January, 1927, and on the first day of January, 1928, then on the 1st day of January, 1928, provided there be no default under the terms of this contract, said Jesse Jones may demand and said McGinley Land Company, upon surrender of this contract, by said party of the second part for cancellation, shall then make his warranty deed to the land above described in favor of said party of the second part, upon the usual form, subject, however, to any claim, encumbrance, lien or title created or suffered to be created, by reason of failure, if any, of said party of the second part to pay any taxes, general or special, on said lands or any part thereof due on or after January 1, 1925, or by reason of any acts of said party of the second part or of any claiming under him, as to all of which there shall be appropriate exceptions in the warranty clause to be

inserted in such deed, provided, however, that upon making delivery of said warranty deed by first party to party of the second part, the party of the second part shall execute and deliver a first mortgage or deed of trust, on the usual form satisfactory to first party, including the release of dower and homestead, on all of said property, said mortgage or deed of trust to secure payment of notes then to be executed and delivered by party of the second part, to first party for the amounts of all of said deferred rent installments not paid at the time of delivery of deed, as above mentioned, such notes to mature on the respective dates on which the deferred rent installments above set out would become due if such notes were not executed. Such notes shall bear interest at the rate of six per cent per annum from the respective maturity dates until paid, interest payable annually; both the notes and mortgage or deed of trust hereinbefore referred to shall be made in favor of said first party or whomsoever he may designate in writing, and such mortgage or deed of trust shall be conditioned also upon the performance of the other agreements on the part of the party of the second part in this contract contained in regard to payment of taxes and statutory liens." . . .

Further, as an *addendum* to the so-called bond for deed and on the reverse side thereof there appeared to have been executed on the same day, and appears the following:

"It is expressly understood by and between the parties to the foregoing lease and bond for deed which is contained on the reverse side of this paper that the following stipulations shall become a part thereof and as legally binding as any of the conditions therein contained.

"(1) It is expressly provided and agreed that $30 shall be added to the purchase price of the land herein mentioned and shall be payable for fencing furnished by first party on or before the deed of conveyance is to be made for said land.

"(2) That $54.73 shall also be added to the purchase price of said land in payment for lumber used by the second party herein mentioned for building houses and barns on said land, which said lumber was furnished by the said first party.

"(3) Both of the above named amounts of money shall bear interest at the rate of six per cent per annum from the date of this bond until paid.

"(4) Before a deed of conveyance is to be made pursuant to the terms of the agreement herein contained, all interest on the entire purchase price, including the above mentioned items, also shall be paid in full, and all taxes and assessments of every kind to said date shall be paid in full by the second party hereto."

The ledger sheets and record of the account of respondent with the appellant, kept and offered by the appellant show that appel-

lant, on December 7, 1927, and to December 31, 1927, had and held to the use and benefit of respondent the total sum of $330.46. That on December 31, 1927, the appellant, out of the amount of said fund paid the 1927 taxes on said land in the sum of $112.40, leaving a balance in the custody of appellant, of respondent's money, in the sum of $218.06, which amount, belonging to respondent, was on January 1, 1928, and thereafter until May 9, of that year, in the custody of appellant, with nothing further charged against respondent's balance until May 9, 1928.

Appellant also, on its behalf, offered in evidence the series of notes prepared by appellant to be signed by respondent, and also the deed of trust to secure the same, to be also signed by respondent.

The notes were seven in number, all dated January 1, 1928, payable to the order of the McGinley Land Company, six of which were in the sum of $200, due successively as follows:

$200.00 due January 1, 1929
$200.00 due January 1, 1930
$200.00 due January 1, 1931
$200.00 due January 1, 1932
$200.00 due January 1, 1933
$200.00 due January 1, 1934

And one note in the sum of $1817.09, dated January 1, 1928, and due January 1, 1935. And also offered in evidence the form of a deed of trust, prepared by appellant, to be executed by respondent Jesse Jones, and Roberta Jones, husband and wife, to R. L. Ward, trustee for McGinley Land Company, third party, which deed of trust described to be, conveyed the land hereinbefore described to the trustee herein named, to secure the payment of the notes therein mentioned and payable to appellant.

Appellant also offered in evidence a general warranty deed from appellant to respondent, dated January 1, 1928, but executed and acknowledged on January 16, 1928, by which appellant purported to convey to respondent the land hereinbefore described, subject to the deed of trust last above mentioned. While this deed appeared as executed and acknowledged, it had not been delivered but was so executed and acknowledged for delivery as provided in said bond for title.

The evidence as to whether certain payments were in fact made by respondent or were improperly charged to him, by appellant, but not made by respondent to appellant company, were disputed questions of fact, submitted to the jury. In our examination of the record, we find that a few of the items in evidence do not appear on the ledger sheet offered by appellant. Therefore, such questions being properly considered by the jury, we are bound by its finding upon the facts submitted.

The balance, a credit, in favor of respondent, appearing as of January 1, 1928, shown by the ledger sheet is in the sum of $218.06.

That balance supports the respondent's (negro's) contention that his payment of $200, then due, had been paid and was so shown by his balance, appearing on appellant's ledger sheet of date January 1, 1928, by it offered in evidence. In fact it reasonably appears to us from the record that respondent in fact was entitled to a credit for a much larger sum on account of double charges of certain items, such as the Gilchrist and Posey accounts, and several other items paid by respondent and not so appearing on said sheet; and also charges against respondent for taxes previously paid by him.

We shall not discuss in detail the various items questioned, suffice it to say that the facts from the record were very definitely presented to the jury for its consideration, therefore from our careful consideration of the evidence we agree with the finding of the jury.

The petition alleged that respondent had paid all the taxes on the land described, made all the annual payments and improvements on the land as required by the contract and in all things performed the terms and conditions of said contract to be by him performed, and had demanded of appellant his warranty deed, which was to be delivered to him on January 1, 1928, but which appellant had failed and refused to do.

In our opinion the refusal of appellant to make and deliver its deed under the facts shown, conclusively disposes of appellant's assignments of error, Nos. 1, 2, 3 and 6.

It is urged by respondent, and we think properly so, that the proper measure of damages for breach of contract of sale of the land by the vendor, is the actual injury sustained by the vendee, which in this case is, we think properly contended to be the value of the improvements put on the land, the payment of the taxes thereon, together with the amount of the payments made thereon by the respondent under the terms of the contract, which the jury found to be, as provided by the terms thereof.

I. Under appellant's Points I, II, III and VI, it is alleged that the plaintiff failed to show a breach of contract. To this we cannot agree. The testimony of the plaintiff, in our opinion, clearly shows a breach, beside which the evidence offered by appellant established that respondent had made all the cash payments under his contract and had paid all the taxes, and that all he owed was taxes for 1927 and the land payment due January 1, 1928, the payment of which was established by appellant's ledger sheets and the record of the account of Jesse Jones with the McGinley Land Company, offered in evidence by appellant.

II. The measure of damages for breach of contract of sale of real estate by the vendor is the actual injury the vendee has sustained and the courts will put the vendee *in statu quo*. The plaintiff in this case in his petition sued for the return of the payments on

the land and the value of the various improvements put on the land by him under his contract. Testimony of these damages went in without objection. Plaintiff's instruction No. 1, permitted the plaintiff to recover these items as damages in the event the jury found in his favor. This is a proper measure of damages in a case of this character. [Hannibal & St. Jos. R. Co. v. Shortridge, 86 Mo. 662; Patillo v. Martin, 107 Mo. App. 653, 83 S. W. 1010; Parsons v. Kelson, 141 Mo. App. 369, 126 S. W. 227; Alford v. Hood, 214 Mo. App. 482, 256 S. W. 535; Goodrich-Lockhart Co. v. Sears, 270 Fed. 971.]

(a) Since the plaintiff testified that he had not agreed to stand good for the open accounts of Posey and Gilchrist, then he was also entitled to recover those items as overpayment. The rule is that where the vendee pays more than he should pay under the contract, whether such payment be by mistake, fraud or duress, the excess may be recovered in an action for breach of contract and plaintiff's instruction No. 2 was properly given. [39 Cyc. 2016; Porter v. Citizens Bank, 73 Mo. App. 513; Pemberton v. Williams, 87 Ill. 15.]

(b) Plaintiff was likewise entitled to interest on the items so paid from the date of the breach of the contract, being January 1, 1928. [Goodrich-Lockhart Co. v. Sears, 270 Fed. 971; Sec. 2839, R. S. Mo. 1929.]

(c) Failure of respondent to bring his suit immediately was not a waiver, since under the statutes of Missouri, the limitations therefor are ten years, and the mere delay to bring suit was not a waiver of his claim. [Curtis v. Sexton, 201 Mo. 217, 100 S. W. 17.]

The contract upon which plaintiff (respondent) bases his right to recover in this case is in our opinion a clear statement of the premises, which authorizes such recovery. First, he agrees to pay for each of the three years, 1925, 1926 and 1927 the sum of $200 as rental. For the first two years the ledger sheets and record of account of respondent show the special payments of $200 each and for the year 1927 the account offered by appellant shows a balance to the credit of Jones (respondent) in the sum of $218 which, upon his demand for a deed, as provided by the contract, must be applied to the purpose which it clearly shows was intended by respondent.

This conclusion is clear, without considering the large sum in excess of the $200, which the evidence shows was not credited to the respondent.

In our opinion there was no reversible error in the rulings of the trial court, on the questions arising upon the admissibility of the evidence, and the jury, we think, was fairly instructed upon the issues submitted to it.

The record of account, kept by appellant was an uncertain one, and appears to us to fall short under the evidence, of being sufficiently accurate to warrant a conclusion other than in accord with the finding of the jury.

It is clear that respondent understood that he was then entitled to his deed; that he had been to the office of the representative of appellant, at Wardell, Missouri, asking for the deed, and then concluded to notify appellant at its office in Chicago, of that fact. That on January 4, 1928, he wrote and mailed to appellant's office at Chicago, his letter, claiming that he was entitled to the deed, giving his reasons, therefor, which letter is as follows:

"McGinley Land Company,

"1214 Fisher Bldg.,

"Chicago, Ill.

"Pleasir to your Honner i was in your office at Wardell on the (2) of this month looking for my deeds. An your Book keeper read a letter from you telling that i still due some our $260.00. dear sir i Hav Paid Just like Mr. Spidell told me to Pay and Have Recepts of all i hav Paid an I Have a statement of my account and it Prov that it is Paid in Full. So Mr. Spidell told me that you will Be down Here this month so i would Be glade if you will come an Bring my account Because i thaut i due my deeds and if i dont due thim i Have Been miss lid by the Book Keeper at Wardell. i think i Have all my Recpts so if it is that i due the $260.00 i was told Rong by your Book Keeper at Wardell But I have a Recepts of all I have Paid and i Bleave i due my deed & abstract.

"So i will Be your for Further unstanding of the same.

"JESSE JONES.

"Box 141, Wardell, Mo.

"So if it Prove that i due that amount Please Bring or send my deed & abstract.

"An i would giv Mr. Spidell a not for same if i due it Because it would be a set back on the word buying land at Wardell.

"J. E. JONE."

Upon the facts disclosed by the evidence in this case, we are in accord with the views expressed by respondent in his foregoing simple, though polite and forceful letter. He had just returned from a visit to its local office at Wardell, Missouri, where he was informed that he was then indebted to the company (appellant) in the sum of $260, which information he was unable to understand, nor can we. On January 1, 1928, the balance of appellant's account with respondent, was in favor of respondent, in the sum of $218.06, and according to the ledger sheets and record of the account of appellant with respondent, that condition so remained to the 9th day of May, following, so that it remains a fact of record, that appellant then and for a period of more than four months thereafter, had and held in its possession and control, money in the sum of more than the two hundred dollars, then due appellant. Respondent's letter could not have been understood in any other light than as an expression of respondent's understanding that said sum was to be applied

to the payment of the rental for the year 1927; with his account as stated, together with his letter to the company, at Chicago, of date January 4, 1928, the circumstances could mean nothing less.

The judgment of the circuit court was in accord with and supported respondent's understanding that he was ''due his deed'' or in lieu thereof, the return to him of the amount of the purchase price paid by him and also his actual losses and expenditures in placing improvements upon the land in his attempt to fulfill his contract. Therefore, in our opinion, being refused his deed, he was entitled to a judgment for the amount of his loss plus interest thereon.

We find that the verdict of the jury and the judgment of the trial court was for the right party.

Therefore, it is by this court hereby affirmed. *Smith* and *Bailey, JJ.*, concur.