**W & S INVESTMENT COMPANY, INC.,
a corporation, Plaintiff-Appellant,**

v.

**James MUSHRUSH, Iris Mushrush,
Defendants-Respondents.**

**No. 45000.**

Missouri Court of Appeals,
Eastern District,
Division One.

April 10, 1984.

Greg S. Kessler, Donna S. Wood, St. Louis, for plaintiff-appellant.

David M. Nissenholtz, St. Louis, for defendants-respondents.

SNYDER, Judge.

Plaintiff-appellant W & S Investment Company, Inc. sued defendant-respondents, James and Iris Mushrush, for breach of a contract pursuant to which W & S employed the Mushrushes to manage an apartment complex. The Mushrushes counterclaimed for breach of the same contract. Judgment was entered on jury verdict in favor of the Mushrushes for $5,000 on their counterclaim and against W & S on

its petition. W & S appeals. The judgment is affirmed in part, and reversed in part.

W & S alleges the trial court erred in: (1) denying W & S's motion to correct the record; (2) denying W & S's motion for a directed verdict or judgment notwithstanding the verdict on the Mushrushes' counterclaim because the Mushrushes failed to make a submissible case; (3) overruling W & S's objections to the admission into evidence of tenants' threatening letters sent to the Mushrushes; (4) denying W & S's motion for a new trial or judgment notwithstanding the verdict on W & S's petition because the verdict was arbitrary and capricious and against the weight of the evidence; and (5) denying W & S's motion for a new trial or judgment notwithstanding the verdict on the Mushrushes' counterclaim because the award of $5,000 was not supported by the evidence. The Mushrushes maintain the appeal should be dismissed because W & S failed to file a timely notice of appeal.

W & S is in the business of managing rental property in the St. Louis metropolitan area. On behalf of property owners, W & S rents out and maintains property and collects rent from tenants in return for a percentage of the rent.

In February, 1976 W & S hired James and Iris Mushrush, husband and wife, as resident managers of the Wynhurst apartment complex managed by W & S. In early November, 1976, W & S transferred the Mushrushes as resident managers to the Norlakes Apartments, a 184 unit apartment complex in Ferguson in St. Louis County.

The oral employment agreement between the parties required the Mushrushes to perform certain managerial services for W & S, including taking applications of prospective tenants, listening to tenants' complaints, maintaining the apartment complex, and collecting rent. W & S was to compensate the Mushrushes for their services in accordance with terms set forth in a property management booklet although Mr. Mushrush said his understanding was

"the property in its face would pay sixteen–eighteen thousand, possibly more, per year."

The method of compensation was the main source of the parties' dispute. W & S argues that the Mushrushes were to receive 3 per cent of the rents collected, $2,400 per year for snow removal and lawn maintenance, and $3.00 per hour for maintenance work, but that the Mushrushes were subject to a $2.00 per day per vacancy penalty for vacancies in excess of a 2 per cent vacancy rate and that 20 cents per vacancy day would be charged to the Mushrushes against their other income (maintenance, snow removal and lawn care) if the $2.00 vacancy rate penalty should be in excess of their sales fee. The Mushrushes testified generally to the same terms, but James Mushrush said his understanding was the property in its face would pay between $16,000 and $18,000 per year.

The vacancy rate at the Norlakes Apartments was apparently well in excess of 2 per cent. W & S told the Mushrushes that the $1,000 per month which they were taking from rent receipts was more than the amount to which they were entitled due to the excessive vacancy rate. The Mushrushes decided that their compensation was insufficient and left their positions with W & S on or about May 10, 1978.

According to W & S, the Mushrushes owed it $7,083.04, based on the quarterly reports which the Mushrushes received. The amount owed was calculated by deducting the amounts earned, from commissions and other income, from the amounts actually drawn by the Mushrushes against their earnings. The Mushrushes in turn counterclaimed for $16,000 because of W & S's alleged breach of contract. Judgment was rendered in favor of the Mushrushes on both the petition and the counterclaim.

In its first point relied on, W & S contends that the trial court erred in overruling its motion to correct the record to show that W & S filed motions for judgment notwithstanding the verdict and for a new trial on July 21, 1981. W & S contends that, although it filed a motion for new

trial on July 21, 1981, the circuit court clerk failed to make the appropriate entry on the record. To correct this alleged error, W & S filed a motion to correct the record on August 19, 1981, which motion has never been expressly ruled on. The Mushrushes argue that the appeal should be dismissed because the judgment of July 8 became final on August 7 when no post-trial motion was filed and, therefore, the notice of appeal filed on October 27, 1981 was untimely. See Rules 81.04(a) and 81.05(a).

This point seems to involve much ado about nothing. A perusal of the legal file, which has been verified by the circuit court clerk and to which no objection has been made, includes a copy of W & S's "motions for judgment notwithstanding the verdict, for setting aside judgment on defendant's counterclaim, or in the alternative, for a new trial on both plaintiff's claim for damages and defendant's counterclaim." The motion bears the circuit court's file stamp and is marked "received and filed" on July 21, 1981 at 9:38 a.m. "Appellate courts must accept the record as certified." *State v. Morris*, 523 S.W.2d 329, 330[1–3] (Mo. App.1975). Thus, the W & S motion to correct the record is unnecessary because the record already reflects the filing of the motion on July 21, 1981.

■ The record filing date of July 21, 1978 mandates a denial of the Mushrushes' request to dismiss the appeal. The post-trial motions were filed within fifteen days of the judgment as required by Rule 78.04. Because the trial court never ruled on the motion, it was deemed overruled after ninety days or on October 19, 1981. Rule 78.06. The notice of appeal was timely filed on October 27, 1981. Rule 81.04(a) and 81.05(a).

W & S's next point alleges the trial court erred in not granting W & S's motion for a directed verdict or judgment notwithstanding the verdict on the Mushrushes' counterclaim because the Mushrushes did not adduce sufficient evidence to make a submissible case for breach of contract. The point is well taken and the judgment for the Mushrushes on their counterclaim must be reversed.

■ In order to evaluate a contention that the trial court erred in not granting a motion for directed verdict or judgment notwithstanding the verdict, the evidence and the reasonable inferences to be drawn from the evidence must be viewed in the light most favorable to the party against whom the motion has been made. *Snodgrass v. Headco Industries, Inc.*, 640 S.W.2d 147, 156 (Mo.App.1982).

■ Even viewed in the light most favorable to the Mushrushes, the evidence fails to support the verdict on their counterclaim. The only evidence of annual compensation of $16,000 to $18,000 was Mr. Mushrush's testimony that it was his understanding the property "in its face" would pay that and perhaps more. There was no explanation of the meaning of the phrase "in its face."

There was no evidence of a direct promise that W & S would pay $16,000 to $18,000 per year, only Mr. Mushrush's understanding.

When Mr. Mushrush testified about his understanding of the details of the compensation plan, however, he agreed the $16,000 to $18,000 was only a "potential" or a "goal." He testified that the pay arrangement, as set forth in the W & S booklet, was explained to him and his wife, that they were to earn a 3 per cent commission on the rental income, $2,400 per year for the snow removal and lawn maintenance, and $3.00 per hour for other maintenance work they did.

He admitted that they would be penalized $2.00 per vacancy day up to a certain number of days and after that 20 cents per vacancy day. He further admitted that the W & S agent said they could earn $16,000 to $18,000, but also that they could earn less, depending on the gross rents. He understood the draw would fluctuate based on what was happening with the property.

As time went on during the Mushrushes' management of the Norlakes complex, the Mushrushes received reports which showed

the amount of their earnings. Someone from W & S went over the reports with Mr. Mushrush, but he said he did not understand them thoroughly. The last report showed that the Mushrushes had overdrawn their earnings account by $6,601.95.

Mr. Richard E. Stoughton, who owned approximately one-third of W & S, and his son, who supervised the Mushrushes, testified that the Mushrushes were not earning the $1,000 per month they were drawing under the compensation plan. This was discussed with the Mushrushes in early 1978. Mr. Mushrush said they would not work for less than $1,000 per month and in May of 1978 the Mushrushes left.

Although the credibility of witnesses is a matter left to the jury, the evidence here is insufficient for submission to the jury. Mr. Mushrush's somewhat ambiguous understanding of his compensation—that the property would pay $16,000 to $18,000 "in its face"—coupled with his understanding that the $16,000 to $18,000 figures were only a potential or a goal and that they could earn less, is insufficient evidence for submission to the jury of the counterclaim. It permits the jury to speculate. Only through speculation and conjecture could the jury find the requisite definite and certain promise of a specific minimum salary.

■ Proof of a fact essential to the submissibility of a case may not rest on speculation or conjecture. *Tri-Continental Leasing Co. v. Neidhardt*, 540 S.W.2d 210, 211[1–3] (Mo.App.1976); *Phoenix Ins. Co. of Hartford, Connecticut v. Chrysler Corp.*, 534 S.W.2d 474, 479[5] (Mo.App. 1975).

"It is a fundamental principle of contract law that for an agreement to be binding, it must be sufficiently definite to enable the court to determine its exact meaning and to definitely measure the extent of the promissor's liability." *McHenry v. Claspill*, 545 S.W.2d 690, 693[10–13] (Mo.App.1976). See *Cottonseed Delinting Corp. v. Roberts Brothers, Inc.*, 218 S.W.2d 592, 594[3] (Mo. 1949) for an example of a failure of evidence to establish the price term of a con-

tract. The judgment in favor of the Mushrushes on their counterclaim is reversed.

■ W & S next complains that the trial court erred in admitting into evidence threatening letters allegedly sent by tenants to the Mushrushes because the letters were prejudicial, irrelevant and immaterial to a breach of contract lawsuit. Neither the letters nor the contents are to be found in the record on appeal. The propriety of the admission into evidence of letters will not be reviewed where the letters appear nowhere in the record. *Bowers v. Bowers*, 225 Mo.App. 1197, 35 S.W.2d 39, 43–44[5] (1931). W & S's third point is denied.

■ W & S's fourth point relied on is that the trial court erred in denying W & S a new trial or judgment notwithstanding the verdict on its claim against the Mushrushes. W & S argues that the verdict on its petition in favor of the Mushrushes was arbitrary and capricious and against the weight of the evidence. Again, the evidence and reasonable inferences must be viewed in the light most favorable to the Mushrushes. On this point, however, there was sufficient evidence to support the verdict, allowing the jury to judge the credibility of the witnesses, as this court must.

Mr. Mushrush insisted throughout his testimony that he wouldn't work for less than $1,000 per month and, in fact, he was paid that even though the last two quarterly reports showed he had drawn greater amounts than he had earned based on the income calculated in accordance with the terms in the property management booklet. The jury could have questioned the accuracy of the figures on the reports.

Mr. Mushrush threatened to resign if he were paid less than $1,000 and W & S permitted the Mushrushes to draw the money even though the reports showed they had not earned it. The jury could have believed W & S agreed to pay the $1,000 per month in spite of the report figures. Mr. Mushrush said he understood the pay would be not less than $1,000 per month and possibly more, which the jury could have believed. There was sufficient

evidence to support the verdict in favor of the Mushrushes on W & S's petition and W & S's fourth point is denied.

In W & S's final point it complains that the $5,000 verdict on the counterclaim was not supported by the evidence. It is unnecessary to discuss this point in view of the reversal of the counterclaim judgment.

The judgment in favor of the Mushrushes on W & S's petition is affirmed. The judgment in favor of the Mushrushes on their counterclaim is reversed.

KELLY, P.J., and STEWART, J., concur.