**Longius KIM and Gji Kim, Respondents,**

v.

**CONWAY & FORTY, INC. and J.L. Mason of Missouri, Inc, Appellants.**

**No. 54845.**

Missouri Court of Appeals, Eastern District, Division Three.

April 25, 1989.

Application to Transfer Denied Aug. 1, 1989.

John L. Davidson, St. Louis, for appellants.

Canice Timothy Rice, Jr., Margaret E. Zapf, St. Louis, for respondents.

HAMILTON, Judge.

Conway & Forty, Inc. and J.L. Mason of Missouri, Inc., a joint venture, hereinafter referred to as Sellers, appeal from a judgment in the amount of $27,428.57 entered on a jury verdict in favor of Mr. and Mrs. Longius Kim, hereinafter referred to as Purchasers, on Purchasers' petition for breach of contract. We affirm.

In December, 1984, Purchasers signed an agreement with Sellers for the purchase and sale of a condominium. Purchasers delivered to Sellers $20,000 as an earnest money deposit. Pursuant to paragraph 5 of the agreement, Purchasers agreed to complete the color selections for finishing the condominium within fifteen days after the date of the agreement. If a color selection were unavailable, Purchasers agreed to make an alternate selection within twenty-four hours after notification of the unavailability. In addition, paragraph 18 of the agreement provided, *inter alia:*

> Construction deposit and all other deposits made hereunder shall be retained by Seller without interest. If Purchaser shall (a) fail to make color selections in a timely manner as provided for in the

contract or ... (c) not close the sale by the date fixed therefore occurring to failure of performance by Purchaser, the Seller at its option shall have one or more of the below listed remedies: (a) all deposits made hereunder shall be forfeited by Purchasers and this contract cancelled, (b) Purchaser shall pay $75 per day to Seller for each day Purchaser causes closing to be delayed or, (c) Purchaser shall be bound to fulfillment of this contract ...

Purchasers selected colors that duplicated those used in the display condominium. When the agreement was accepted, upon payment by Purchasers of the final portion of the earnest money deposit, Sellers informed Purchasers that certain items, duplicative of the display unit, were unavailable. Purchasers failed to make alternate color selections within twenty-four hours after notification. The record is, however, unclear as to when Purchasers eventually made these selections.

The closing, originally scheduled by Sellers for the end of January and later, for February 15, occurred on March 13, 1985.[1] Purchasers claimed that, having arrived with a check for the full amount of the agreed upon purchase price, they were ready and willing to perform. No representative of Sellers attended the closing. A title company employee provided Purchasers with a closing statement from Sellers that reflected an additional $3,487.44, representing late charges based upon delay in closing. A dispute arose over Purchasers' obligation to pay the late charges. Because Sellers refused to withdraw the late charges, no title to the property was transferred.

Immediately thereafter, Purchasers' attorney wrote to Sellers informing them they were in breach of contract and demanding return of their earnest money as well as money expended for improvements to the property. Sellers, responding by letter, stated that, because Purchasers had breached the contract, Sellers were cancelling the contract and retaining the earnest money deposit.

Purchasers subsequently filed suit alleging Sellers had breached the sale agreement. They sought damages in the sum of $25,000 that apparently included return of the $20,000 earnest deposit and $5,000 for flooring and lighting improvements. The case was tried to a jury. At the close of the evidence, Sellers moved for a directed verdict, arguing, *inter alia*, that they had substantially performed their contractual obligations; that they had committed no anticipatory breach; and that Purchasers had failed to provide sufficient notice before declaring Seller in default. Sellers also argued that Purchasers had tendered no payment in satisfaction of their contractual obligations. The trial judge, after overruling the motion for directed verdict, submitted the following to the jury as Instruction No. 6:

> Your verdict must be for plaintiffs if you believe:
>
> First, plaintiffs and defendants entered into an agreement whereby plaintiffs agreed to purchase a condominium unit from defendants and defendants agreed to sell a condominium unit to plaintiff, and
>
> Second, plaintiffs were ready, willing and able to perform their agreement, and
>
> Third, defendants failed to perform their agreement, and
>
> Fourth, plaintiffs were thereby damaged, unless you believe plaintiffs were not entitled to recovery by reason of Instructions Number *7 or 8.*[2]

The jury returned a verdict for Purchasers in the amount of $21,488.87. There-

1. The parties dispute whether Sellers provided Purchasers with notice of a January closing date.

2. Instruction No. 7 directed the jurors to find for defendants if the jurors believed that (1) plaintiffs caused the delay in the closing; (2) delay was not waived or excused by defendants; and (3) plaintiffs refused to pay the late charges; and (4) by refusing to pay the late charges, the plaintiffs failed to perform. Instruction No. 8 directed the jurors to find for the defendants if they believed that plaintiffs failed in good faith to provide defendants with reasonable notice of their objection to the late charge and a reasonable opportunity to remove the late charges.

after, Purchasers moved for an award of prejudgment interest; the trial court granted the motion. Sellers then moved for entry of a judgment notwithstanding the verdict, and in the alternative, for a new trial. In their motion for judgment notwithstanding the verdict, Sellers incorporated the arguments specified in their motion for a directed verdict. In addition, Sellers argued, *inter alia,* that Purchasers failed to establish that Sellers had breached the agreement because the evidence adduced proved neither an intent not to perform nor a refusal to perform.

Sellers contended in their motion for new trial that the trial court erred in failing to submit Instructions A and B in lieu of Instruction No. 6.[3] This error, Sellers argued, precluded the jury from considering whether Sellers substantially performed or whether Sellers' breach related to a vital provision of the contract. The trial court overruled both motions. Thereafter, Sellers filed a timely appeal.

Sellers raise essentially four points on appeal. They assert the trial court erred (1) in failing to direct a verdict in favor of Sellers and in failing to enter a judgment notwithstanding the verdict; (2) in refusing to submit Sellers' Instructions No. A & B in lieu of Instruction No. 6; (3) in granting Purchasers' post-trial motion for prejudgment interest; (4) in admitting Purchasers' proof of special damages.

■ Sellers first contend the trial court erred in failing to direct a verdict in their favor and in failing to enter a judgment notwithstanding the verdict. In order to evaluate each such contention, the evidence and the reasonable inferences to be drawn from the evidence must be viewed in the light most favorable to the party against whom the motion has been made. *W & S Inv. Co., Inc. v. Mushrush,* 669 S.W.2d 601, 603 (Mo.App.1984). Moreover, a court should sustain a motion for judgment notwithstanding the verdict only when all of the evidence and the reasonable inferences to be drawn therefrom are so strongly against the Plaintiff's case that reasonable minds cannot differ. *Bizzle v. Enterprise Leasing,* 741 S.W.2d 84, 85 (Mo.App.1987).

■ The gist of Sellers' first point is that Purchasers' suit was one for recission, not breach of contract, and Purchasers failed to establish the requisite elements of a cause of action for recission.[4] Sellers focus specifically on Purchasers' failure to adduce evidence tending to prove that Sellers breached a substantial or material term of the contract. Sellers also contend that, in order to prevail, Purchasers must prove that Sellers failed substantially to perform their contractual obligations. Additionally, Sellers argue that Purchasers failed to establish they themselves had not defaulted, which is a requirement, Sellers contend, under a recission theory.

Sellers' arguments rest upon the premise that Purchasers' cause of action is for recission rather than for breach of contract, as Purchasers maintain. Sellers reason that, because Purchasers seek restitution, that is, the return of their downpayment, their cause of action is necessarily one for recission.

Sellers' reasoning is based upon a faulty premise. Contrary to Sellers' contention, a party may sue for breach of contract and elect restitution as a remedy. *Lopp v. Peerless Serum Co.,* 382 S.W.2d 620, 626 (Mo.1964). "The measure of damages for breach of contract of sale of real estate by

---

**3.** Instruction A stated:

Your verdict must be for plaintiffs if you believe:

First, plaintiffs and defendants entered into an agreement whereby Defendants agreed to construct and sell to Plaintiffs the residence referred to in the evidence, and

Second, Plaintiffs performed their agreement, and

Third, Defendants failed to substantially perform their agreement, and

Fourth, Plaintiffs were thereby damaged,

Unless you believe Plaintiffs are not entitled to recover by reason of Instructions Number *7 or 8.*

Instruction B stated:

The phrase "substantially performed" as used in Instruction No. A means performance of all important parts of the contract with only slight variations.

**4.** We note that Sellers make no contention that Purchasers have failed to make a submissible case under a breach of contract theory.

the vendor is the actual injury the vendee has sustained, and the courts will put the vendee in statu [sic] quo." *Jones v. McGinley Land Co.*, 228 Mo.App. 944, 74 S.W.2d 853, 856 (1934). Moreover, damages properly recoverable may include the return of payments made toward the purchase price as well as the value of improvements. *Id.*

The Supreme Court in *Lopp* cites with approval the Restatement of Contracts § 347. 382 S.W.2d at 626. Explicitly recognizing that restitution is an available remedy where a party alleges breach of contract, the Restatement provides the following as an illustration:

> A contracts to sell a tract of land to B for $100,000. After B has made a part payment of $20,000, A wrongfully refuses to transfer title. B can recover the $20,000 in restitution ...

Restatement (Second) of Contracts § 373 (formerly § 347) (1975).

This Restatement illustration tracks the factual situation presented in this case. The evidence, when viewed in the light most favorable to Purchasers, discloses that Purchasers made a $20,000 earnest money deposit on the subject property, that one of the Purchasers attended the closing and manifested an intention to perform by tendering a check for the amount due under the contract, and that Sellers refused to transfer the title to the property. Therefore, Purchasers properly sued for breach of contract, seeking the return of their down payment and the value of their improvements.

■ Sellers next argue that the trial court erred in refusing to submit their proffered Instructions A and B and in submitting Instruction No. 6. When reviewing the propriety of an instruction, an appellate court must review the evidence "in the light most favorable to the submission of the instruction, and a party is entitled to an instruction upon any theory supported by the evidence." *Hopkins v. Goose Creek Land Co. Inc.*, 673 S.W.2d 465, 467 (Mo. App.1984) (citing *Carter v. Boys' Club of Greater Kansas City*, 552 S.W.2d 327, 333 (Mo.App.1977).

Sellers patterned Instruction A upon MAI 26.07. A court may properly submit MAI 26.07 when substantial performance upon the part of the *plaintiff* is legally sufficient to support a verdict in plaintiff's favor where defendant has breached its contractual obligations. Here, Sellers seek impermissibly to modify MAI 26.07 to require the jury to evaluate whether *defendants* substantially performed their agreement. Because substantial performance by Purchasers was never at issue, the trial court committed no error in refusing to submit Instruction A.

Sellers patterned Instruction B upon MAI 16.04. Where the trial court submits MAI 26.07, MAI requires submission of MAI 16.04 as well. Given that we hold MAI 26.07 is an improper instruction under the facts of this case, the trial court committed no error in refusing to submit MAI 16.04.

The submission of Instruction No. 6, which tracked the language of MAI 26.06 and which presented Purchasers' breach of contract theory to the jury, was, therefore, not erroneous.

■ In their third point, Sellers contend the trial court erred in awarding prejudgment interest. We disagree. The prejudgment interest statute, Section 408.020, RSMo (1986), permits a trial court to add prejudgment interest from the date of demand until judgment if a party establishes its claim under the demand. *Errante v. Kadean Real Estate Service, Inc.*, 664 S.W.2d 27, 30 (Mo.App.1984).

Purchasers made demand on March 13, 1985, the same date they claimed Sellers breached the contract. The jury's verdict in Purchasers' favor established that Sellers breached the contract on March 13, 1985. Therefore, on that date, the contract provisions, including paragraph 18 providing that Seller would retain deposits without interest, were no longer binding upon the parties. From March 13, 1985, the date of the breach, to April 6, 1988, the date of judgment, Sellers were retaining no money pursuant to the contract; the trial court could properly assess prejudgment interest

for that period. Moreover, because the amount demanded was undisputed and ascertainment of the amount of interest was purely a matter of mathematical computation, the trial court could properly make that calculation. *General Aggregate Corp. v. LaBrayere,* 666 S.W.2d 901, 910 (Mo.App.1984).

 In their final point, Sellers assert the trial court erred in admitting proof of certain items of special damages. Purchasers sought to recover costs they paid for flooring and lighting improvements for the condominium. Sellers claim that because these costs were unforeseeable at the time of contracting, they were unrecoverable by Purchasers. A party may recover special damages if the parties "could have reasonably contemplated the probability of such losses at the time the contract was entered into." *Liberty Fin. Management Corp. v. Beneficial Data Processing Corp.,* 670 S.W.2d 40, 57 (Mo.App.1984).

When the parties contracted, Purchasers informed Sellers that they wanted their finished condominium to duplicate the display or model condominium. These specifications were incorporated as an addendum to the contract. In addition, paragraph 5 of the contract contained provisions for alternate color selections if the original selections were unavailable. Paragraph 6 provided procedures to follow if Purchasers desired to deviate from conditions prevailing in the model condominium unit. Sellers' agent, moreover, informed Purchasers at or shortly after acceptance of the sale contract that some of the display condominium selections might be unavailable. Thus, the record demonstrates that the parties could reasonably have contemplated the probability of such costs when the contract was made. The trial court properly admitted those costs into evidence and submitted them to the jury.

Judgment affirmed.

DOWD, P.J., and SIMON, J., concur.