[1] This is an action to recover commissions alleged to be due the plaintiff under an oral contract of employment with the defendant. The petition was in four counts, and the cause was tried before the court without a jury. During the trial defendant admitted the allegations of counts 2, 3, and 4, leaving for determination the question of liability under count 1.
[2] The pleadings and the evidence disclose that in the year 1934 plaintiff was employed by the defendant as a salesman, and in consideration of his services he was allowed a drawing account of $100 a month and $3.50 a day for expenses, with the further agreement that he would be paid 5% of all gross sales made, less an annual quota of $12,000 and any returned merchandise. The commission was to be computed and paid at the end of each fiscal year. In 1935, by agreement, plaintiff's drawing account was increased to $130 a month and his expense account was increased to $4.50 a day, and the annual quota of sales was increased to $19,200. He continued to work under this plan until February 1, 1943, when he quit defendant's employment for a period of about one year and then returned to such employment under the same terms as the previous agreement, except that he was allowed $25 additional a month as expenses. He entered upon his new duties on February 1, 1944, and continued until October 1, 1945, when he quit to accept other employment.
[3] During all those years his drawing and expense accounts were paid regularly each month and his commissions were computed and paid at the end of each fiscal year, which had been from October to October, *Page 544 
but when he re-entered defendant's employment the fiscal year was from February to February. For the year February 1, 1944 to February 1, 1945, plaintiff was paid his drawing and expenses and his commissions. When he quit on October 1, 1945, his drawing and expense accounts were paid in full, but defendant refused to pay any commission on merchandise sold by the plaintiff between February 1 and October 1, 1945, because he had not completed his full year's service.
[4] The only controverted issue is whether plaintiff's contract of employment was for a definite term of year to year or whether it was for an indefinite time terminable at the will of either party. The trial court made findings of fact and stated conclusions of law, the effect of which is that plaintiff was employed for an indefinite term; that his employment could be terminated at any time by either party, and that plaintiff was entitled to his commission on goods sold between February 1 and October 1, 1945, calculated upon a pro rata basis. Judgment was entered accordingly and defendant appealed.
[5] This being a jury waived case, we will review the evidence and arrive at our own conclusions as to the law and the evidence, giving due deference to the findings of the trial court, but will not set aside the judgment unless it is clearly erroneous. Sec. 114(d), Laws of Missouri, 1943, p. 388, Mo.R.S.A. § 847.114(d); Charles v. Charles, Mo.App., 208 S.W.2d 476; Weber, Inc., v. Interstate Freight System, Mo.App., 205 S.W.2d 291; In re Jamison's Estate, Mo., 202 S.W.2d 879; Geisinger v. Milner Hotels, Mo.App., 202 S.W.2d 142.
[6] It is conceded the contract of employment was oral and made with William Weyer and Ed Mathews representing defendant company. Plaintiff testified that, in 1933, he was living in Omaha, Nebraska, and learned that defendant was in need of a salesman and came to Kansas City and applied for the job and talked with Mr. Weyer. "He asked me what I had been doing and what I knew about the beauty shop business. * * * It was a very short conversation, and he told me to go upstairs and see Ed Mathews and make arrangements to go to work. * * * Mr. Mathews told me what the compensation was to be. He said I would start to work at $100 a month and a drawing account when I took over a territory." He was also told that he would be allowed $3.50 a day for expenses and a 5% commission for all goods sold in excess of $12,000, less returned merchandise. This arrangement was continued until 1935, when his drawing account was increased to $130 and his expense account to $4.50 and his quota increased to $19,200. He continued to work under these terms until February 1, 1943, at which time he quit defendant's employment and worked elsewhere. Defendant calculated the commissions due him for the four months' period between October 1, 1942 and February 1, 1943, by prorating his quota for the four months' period or on the basis of one-third of a year. This calculation was made and commissions paid the following June after a reasonable time allowed for returned merchandise.
[7] Plaintiff also testified that at no time during his conversation with Mr. Weyer or Mr. Mathews was anything said concerning his employment being for a period of one year or for any definite time, but that his bonus was to be paid on a fiscal year basis. Concerning the duration of his contract of employment he testified, on cross-examination, as follows:
[8] "Q. Don't you know you had a contract for a year? * * * A. It was a continuous contract so long as I worked for them.
[9] "Q. Don't you know the contract was for a year at that time? A. I was paid once a year. * * *
[10] "Q. Is it your contention you never were employed by the defendant * * * for any definite time? A. That's right.
[11] "Q. At no time for any definite length of time? A. No, sir. * * *
[12] "Q. You contend you never were employed for any length of time from February 1, 1944? A. Yes, sir. * * *
[13] "Q. You contend that your employment from February 1, 1944 * * * was not *Page 545 
for any definite length of time? A. Yes, sir."
[14] Concerning plaintiff's re-employment by Mr. Mathews in January, 1944, the following questions and answers were given:
[15] "Q. And that in those conversations he employed you as of the previous terms, as of the previous contract and you were to work from February first, 1944, to 1945? A. That's right; I first started to work in February, 1944. There was no stipulation as to how long I was to work.
[16] "Q. You are telling this court you didn't testify you were employed to work from February first, 1944, to February first, 1945? * * * A. I had no contract.
[17] "Q. You had an oral contract, did you not? A. I was paid from February first —
[18] "Q. (Interrupting) Did you have an oral contract? A. Yes, sir.
[19] "Q. * * * You and Mr. Matthews talked to one another and you agreed your contract would be from February first, 1944, for one year, is that right? A. I didn't stipulate any time. I was to go to work — I was to go back to work on the same basis I had worked previously."
[20] Mr. Mathews, defendant's sales manager, testified that he had nothing to do with employing plaintiff but merely directed his activities after he had been employed by Mr. Weyer. He confirmed plaintiff's testimony concerning the amount of the drawing and expense accounts and quota; and that when plaintiff was re-employed, about the first of February, 1944, that he, Mathews, telephoned and asked him to return to the company on the same terms and conditions under which he had worked prior thereto, except that he would be allowed an additional $25 a month for expenses. He made no statement that plaintiff was employed by the year or for any definite time.
[21] William Weyer testified that he employed plaintiff by oral agreement. Concerning that agreement, he stated that he employed plaintiff for a period of one year and then detailed the arrangements in this language:
[22] "The way I employed Mr. Smith was that he was to work on an amount of $12,000 a year; a drawing account against $12,000 a year quota, with $100 a month drawing account, plus 5 percent commission at the end of the year. * * *
[23] "Q. Did you have any other arrangement with him as of the time of his employment? A. I pointed out that we furnished a car and paid any expense he had. Then it was a flat hotel expense, and incidental expenses pertaining to the business."
[24] This witness also testified that after he employed plaintiff in 1934 he turned the entire matter of employment over to Mr. Mathews and had nothing more to do with it during the following years.
[25] It is true Mr. Weyer stated that he employed the plaintiff for one year, but at one place in the transcript this answer was stricken by the court because it was a mere conclusion and the witness directed to detail the conversation, which he did, in the language above quoted from his testimony. There is nothing in that conversation to indicate he stated to plaintiff that he was to be employed on a year to year basis.
[26] On the issue of whether the employment was from year to year or for an indefinite period, plaintiff's testimony is that nothing was said about a year to year employment; while Mr. Weyer did testify that he employed plaintiff for a year at a time, that was his opinion of the contract. However, there is a significant bit of conceded testimony which, we think, throws light on the question of the duration of the contract. When plaintiff quit his employment as of the first of February, 1943 (at that time the fiscal year was from October to October), defendant paid him his commission on all goods sold, and not returned, from October 1, 1942 to February 1, 1943, and it was calculated on the basis of one-third of the year. Defendant did not then contend that plaintiff must complete the year before he would be entitled to commissions. The construction of the contract by the parties at that time was *Page 546 
that it was for an indefinite term and could be terminated by either party at any time, and a settlement reached on the basis of the merchandise sold during that period. It is a well settled principle of law that where the parties themselves have put a construction upon the provisions of a contract, the terms of which are uncertain, ambiguous or indefinite, the court will accept that construction, unless contrary to the obvious intendment of the parties. Wentzel v. Lake Lotawana Company, 226 Mo.App. 960, 48 S.W.2d 185; Porterfield v. American Surety Co., 201 Mo.App. 8, 210 S.W. 119.
[27] We have searched the record for any direct testimony to the effect that plaintiff's employment was on the basis of a full year and that no commission would be paid him for goods sold unless he completed his year's work, and we find none. It is argued that because the commission was to be computed and paid at the end of the year, it should be inferred that plaintiff must complete the year's work before earning any commission. We do not understand that to be the law. It is well settled in this state that an indefinite hiring at so much per day, or per month, or per year, is a hiring at will, and may be terminated by either party at any time; also that a general hiring is presumed to be a hiring at will. Forsyth v. Board of Trustees of Park College, Mo.App., 212 S.W.2d 82, 85; Paisley v. Lucas, 346 Mo. 827,143 S.W.2d 262, 271; Ogden v. Atlas Brewing Co., Mo.App., 248 S.W. 644. The most favorable construction of the evidence, even from defendant's viewpoint, is that it is conflicting, and, being oral, we will defer to the findings of the trial court.
[28] Defendant's assignments of error and the citations and argument are based on the proposition that the plaintiff's employment was for a definite period, i. e., year to year, and that the trial court erred in holding to the contrary. Since we agree with the findings of the trial court that plaintiff's employment was at will, it can serve no useful purpose to discuss and distinguish the cases relied on by the defendant; they are not applicable under the facts of this case.
[29] It is our conclusion that the judgment is for the right party and should be affirmed. It is so ordered.
[30] DEW, P. J., and VANDEVENTER, J. (sitting by order of the Supreme Court), concur.