George A. LOPP and Dorothy Lopp,
Appellants,

v.

PEERLESS SERUM COMPANY, a Corporation, and Philips Electronics and Pharmaceuticals Industries Corporation, a Corporation, Respondents.

No. 49690.

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1964.

Motion for Rehearing or to Transfer
to Court En Banc Denied
Oct. 12, 1964.

G. Carroll Stribling, Alphonso H. Voorhees, Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, James T. Britt, Spencer, Fane, Britt & Browne, Kansas City, for appellants.

Thompson, Mitchell, Douglas & Neill, James M. Douglas, William G. Guerri, W. Stanley Walch, Edwin D. Akers, Jr., St. Louis, Smith, Sherwood, Utz & Litvak,

Basil L. Kaufmann, St. Joseph, for respondents.

PRITCHARD, Commissioner.

Plaintiff, George A. Lopp, for breach of an employment contract, sought by the alternative remedy of restitution the value of certain corporate assets (formulas for veterinary pharmaceutical products, ideas and the name of the Peerless Serum Company, which is hereinafter called "Old Peerless"). Mr. Lopp had transferred the corporate assets pursuant to a contract with the Anchor Serum Company of Missouri to the newly formed Peerless Serum Company (hereinafter called "New Peerless").

Trial was to a jury which returned a verdict for plaintiffs against both defendants in the amount of $100,000 damages with interest thereon at 6% per annum from November 1, 1956, which is the date of the employment contract claimed to be breached, amounting to $33,000. Thereafter, the trial court granted defendants' after-trial motions for judgment in accordance with the joint motions (and defendant Philips Electronics and Pharmaceutical Corporation's separate motion) for directed verdict made at the close of the whole case. Judgment was then entered in favor of defendants, and in the alternative (if the judgment for defendants be reversed) the trial court ordered a new trial because of error in the giving of certain numbered instructions to the jury. Plaintiffs have appealed from the judgment against them.

Old Peerless was organized in 1921 by Mr. Lopp's father and Mr. C. L. Charles, whose interest was later purchased by Mr. Lopp's father. The company was then engaged in the hog cholera serum production and sales and it continued in business until the July, 1951, flood in Kansas City, Missouri, when the company was thereby forced to cease production. In 1935 or 1936 Old Peerless had started the manufacture of veterinary pharmaceuticals, which is the compounding of drugs and chemicals to be used in treating specific conditions or diseases of livestock. The products of the

veterinary pharmaceuticals were produced in powders, tablets and ointment forms.

After the 1951 flood, the company started back in the pharmaceutical business, hiring two chemists therefor, and engaged entirely therein. The chemists worked continuously in the development of pharmaceutical formulations and in supervising the manufacturing of the various products which were involved. About May 15, 1956, the plant of the new enterprise burned, and the remaining assets of Old Peerless were its accounts receivable, cash on hand, some real estate where the former serum plant had been located, and the formulas of its pharmaceutical business. These formulas are shown by Plaintiffs' Exhibits J–1 through J–130.

In the fall of 1956, Mr. Lopp entered into negotiations with Mr. True Davis, Jr., President of the Anchor Serum Company, a Missouri corporation, of St. Joseph (hereinafter called "Anchor of Missouri") for the sale and purchase of the business of Old Peerless. Consequent to the negotiations, a contract was entered into, the terms of which are involved in this action, and which was executed by Mr. Lopp individually and as President of Old Peerless, and by Mr. Davis as President of Anchor of Missouri. At the time of the execution of the contract, on November 1, 1956, Mr. Lopp owned or had control of all of the outstanding capital stock of Old Peerless. His wife, the plaintiff, Dorothy Lopp, is nominally a party, she having assigned her interest to Mr. Lopp.

The initial written contract of November 1, 1956, being between Old Peerless and Mr. Lopp as first parties, and Anchor of Missouri as second party, first recited that Old Peerless had been engaged in the serum business for a number of years, but due to a casualty had not been in production in recent months and except for certain formulas, trademarks, ideas and its name, did not have any physical assets of any kind, nature and description, except certain real estate and cash not included in the transaction.

It then recited that first parties "desire to sell the formulas, trade marks, ideas and the name of the company for a nominal consideration, provided George A. Lopp is given employment as hereinafter set forth, and the Second Party is willing to make said purchase and to give said employment * * *." It was then agreed that second party would immediately arrange to have a new corporation formed in the name of Peerless Serum Company (New Peerless) and that first parties would change the name of Old Peerless to G. A. L. Enterprises, Inc. These things were done and New Peerless came into existence as a subsidiary to Anchor of Missouri which owned all of its capital stock. Old Peerless became "George A. Lopp Enterprises, Inc.", which corporation was dissolved on March 25, 1958, by certificate therefor from the Secretary of State.

Mr. Lopp's employment by New Peerless, upon the incorporation of which the entire transaction was to have been consummated, was to commence on December 1, 1956, and extend for three years thereafter. During the first year only his salary was to be $7,-500 plus any commissions on sales to his old customers, or any new customers (but the commissions were not to apply to sales to any customers of Anchor of Missouri). The commission rate was to be 12½% of the sale price of all items carrying a minimum of 25% or more gross profit before selling, administrative and other general expenses. On items of which the gross profit was less than 25%, Mr. Lopp was to receive one-half of the gross profit (before taxes) on such items. The contract further provided that the parties might agree in writing to expand the items sold by Mr. Lopp, but until that time he would be restricted to the exclusive contract of all his former customers and new customers of Old Peerless, except that he would have the right to sell a line of syringes known as the Selecta Syringe. There was also a provision that Mr. Lopp would not sell or promote the sale of any pharmaceutical items or products of any other pharmaceutical com-

pany, and that he would devote his time to the business of New Peerless.

Mr. Lopp testified that shortly after the execution of the contract he turned over to Mr. Darwin Aldrich of Anchor of Missouri copies of the formulas he had at that time, and also a notebook which contained a breakdown of the cost of manufacturing the products. He also undertook to sell the permitted products. In the early spring of 1957, the initial contract was amended by an undated written addendum so that Mr. Lopp could sell or promote in any way the sale of biological and pharmaceutical products of any affiliated company of Anchor of Missouri, including the Peters Serum Company. On May 16, 1957, a supplemental agreement in writing was made which, as pertinent, provided that there would be no further commissions paid to Mr. Lopp; his salary would be $15,000 a year, and if there should be unsatisfactory service or if for any reason the New Peerless Company desired to terminate the agreement it could do so on 30 days' notice in writing, but Mr. Lopp would then have the right, if he desired, to resume his employment upon the commission basis outlined in the original contract. Mr. Lopp testified that the modification came about after a discussion with Mr. Davis to the effect that Mr. Lopp was not earning above his expenses as a commission salesman because of loss of customers and cancellations caused by orders not being filled properly, there having been experienced by New Peerless considerable difficulty in the production of products. Mr. Lopp was subsequently placed in charge of the production department of the company, and his testimony was that he straightened out the production problems, and that he thereafter, until his discharge, performed whatever duties were required or requested of him by Mr. Davis. These duties included contacting Sears-Roebuck & Company to set up a line of pharmaceuticals to be sold through its catalogue; the Rexall Drug Company for the sale of products under the exclusive name "Peerless Serum Company"; and of the Upjohn Company for the preparation of its products. Mr. Lopp continued under his contract at a salary of $15,000 per year until his employment was terminated on February 29, 1960, he having been notified of such termination on January 1, 1960.

This action was filed in two counts on August 20, 1960. Count I of the petition was on the theory of restitution for breach of the employment contract upon which Mr. Lopp elected to submit his case. Count II, being upon the theory of damages for loss of past and prospective income, and for punitive damages (stricken by the court) for wrongful discharge, was dismissed by Mr. Lopp "without prejudice" during the trial upon his election to proceed upon the theory of Count I.

With respect to the first year remuneration of $7,500 which is called a "salary" in the initial contract, Mr. Lopp pleaded that the consideration for the purchase of the name "Peerless Serum Company", its established business, trademarks, formulas and ideas then owned and used by that company, and as compensation in full for the value of all said assets, Anchor Serum Company agreed to pay plaintiff a year's salary in the sum of $7,500, plus such commissions as he might earn, for as long as he might desire to continue such employment by the new Peerless Serum Company. He then alleged that defendants had paid only $7,500 for the reasonable value of the assets of Old Peerless sold, and that $46,265 received by him as commissions and salary was for services actually rendered and was not creditable against the value of assets actually received by defendants. On cross-examination, Mr. Lopp testified that under the contract of November 1, 1956, he was to transfer the formulas and name of Old Peerless to the Anchor Serum Company, and in return for that he was to receive $7,500 and an employment contract for his lifetime. By his measure of damages Instruction No. 10, the jury was told that if they found in favor of plaintiffs it could award as damages an amount equal to the fair value of the formulas "less such

amounts not less than Seventy-five Hundred Dollars ($7,500) as you may find and believe from the evidence were paid to Plaintiffs on account of such formulas, * * *."

In his brief, Mr. Lopp takes the position that the contract was a single and enforceable agreement to employ and reemploy him for three-year periods so long as he should live in consideration of the sale of the formulas and the name of Old Peerless; that "There is no separate consideration of $7,500 for formulas because the agreement to give employment upon all of the terms outlined was the consideration for all of the covenants made by Appellant Lopp and Old Peerless as First Parties under the contract." Defendants, by Point A(2) of their brief, say that the contract provisions are severable, specifying separate considerations for the sale of the formulas and Mr. Lopp's employment, and Mr. Lopp cannot get restitution for the value of the formulas because the contract with respect to the formulas has been fully performed.

■■■ We are not prepared to say that the provisions of the contract are apportionable in the sense that on the one hand the parties separately agreed upon the sale of the formulas of Old Peerless for $7,500 to the corporation to be formed, New Peerless, under the initial contract; and on the other hand that the parties separately agreed upon the employment contract embodying mutual promises to render services and to remunerate therefor. A more reasonable construction is that the matters of consideration are entire and are not apportionable—that $7,500 was not all that Mr. Lopp was to receive for the formulas, but, in addition, he was to have an employment contract. The question of whether a contract is entire or severable is primarily one of intention which "is to be determined from the language which the parties have used and the subject matter of the agreement." Swinney v. Continental Bldg. Co., 340 Mo. 611, 102 S.W.2d 111, 120 [1, 3], where it is also said, quoting Williston, Contracts, 1652, § 963, that the

essential test "can be nothing else than the answer to an inquiry whether the parties assented to all the promises as a single whole, *so that there would have been no bargain whatever if any promise or set of promises were struck out.*" (Emphasis added.) Considering the words used in the instant contract, if the matter of the sale and purchase of the formulas and name of Old Peerless were stricken, clearly the parties would not have reached the agreement which they did. Anchor of Missouri wanted the formulas and name and was willing to make the purchase thereof and to give Mr. Lopp the stipulated employment. Mr. Lopp was willing to sell the formulas provided he would be given the employment. It is with this conclusion that we overrule defendants' Point A(2) of their brief, under which they cite Rest. Contracts § 351 (a), and contend that Mr. Lopp may not have the remedy of restitution under the theory therein set forth because the apportioned part of the consideration ($7,500 for the formulas) has been rendered in full. See also 5 Corbin on Contracts, § 1111, p. 591, and the there cited case of Schwasnick v. Blandin, 65 F.2d 354 (C.C.A.2d, 1933), at page 358, where it was held that the contract there in question did not attempt to apportion payments for three items mentioned in the contract, and for this reason it was permissible for the plaintiff to recover in the action for services (and thus Rest. Contracts § 351(a) would be inapplicable).

■■ Defendants say that prior to bringing this action Mr. Lopp failed to make an actual tender of the $7,500 received by him on account of the sale of the formulas and name of Old Peerless, and that he may not therefore maintain this action for restitution. The petition and instruction upon the measure of damages permit a credit upon the amount found to be due Mr. Lopp of the $7,500. Defendants' Point A(3), raising this objection, is without merit and is overruled because, as is said in Rest. Contracts, § 349(2) (c), "A failure to offer to return the performance received does not

make restitution unavailable as a remedy if it is merely money paid by the defendant, the amount of which is credited to him." See also 5 Corbin on Contracts, § 1116, p. 625, et seq., for a discussion of the necessity of actual tender as a condition of restitution.

■ Anchor of Missouri was a party to the initial contract of November 1, 1956. That contract provided that New Peerless would be formed. When it was incorporated all of its stock was owned by Anchor of Missouri, and Mr. Davis was president of and owned the controlling interest in both corporations. Anchor of Missouri paid Mr. Lopp's salary and commissions, charging them back to New Peerless. Anchor of Missouri, through its president, Mr. Davis, directed and controlled the activities of Mr. Lopp during the course of his employment. It is apparent that New Peerless was merely a shell and was wholly controlled by Anchor of Missouri as an instrumentality thereof for its own purposes and conveniences: New Peerless was formed by Anchor of Missouri for the sole purpose of acquiring the remaining corporate assets of Old Peerless. In this situation the corporate entities of the two corporations should be disregarded. See Schwartz v. Shelby Construction Company, Mo., 338 S.W.2d 781, 794, and cases and authority cited. There was evidence that the instrumentality of Anchor of Missouri, New Peerless, had insufficient corporate assets to discharge an obligation of the amount claimed by Mr. Lopp under his demand for restitution of the reasonable value of the assets turned over to it. New Peerless had an original capitalization of $2,500; advancements (as a loan and not as a capital investment) were made from time to time for running expenses; and that corporation lost $107,000 during the time of Mr. Lopp's employment. It would seem that Mr. Lopp has shown the required injustice or wrong to him which would be occasioned if these corporate entities were not disregarded. Carter v. Matthey Laundry & Dry Cleaning Co., Mo., 330 S.W.2d 771, is

therefore inapplicable to the facts of this case.

Anchor of Missouri continued to own all of the stock of New Peerless until October 19, 1959. It then entered into a merger agreement with the Delaware corporation, Philips Electronics, Inc., which resulted in the corporate existence of Anchor of Missouri coming to an end, and all of its assets, including New Peerless stock, *and liabilities* were transferred to the surviving company, defendant Philips Electronics and Pharmaceuticals Industries Corporation. Immediately upon the effective date of the merger, the latter company on October 19, 1959, transferred all the assets it had acquired from Anchor of Missouri to the newly formed Anchor Serum Company, a Delaware corporation, which had been incorporated on October 6, 1959. The transfer *was subject to all of the liabilities* of Anchor of Missouri (the name of which on December 30, 1960, was changed to Philips Roxane, Incorporated).

■ Defendant, Philips, did not own any of the New Peerless stock at the time Mr. Lopp's cause of action arose, January 20, 1960, but Anchor of Delaware then owned all the stock pursuant to the transfer of that stock by defendant, Philips, on October 19, 1959. Anchor of Delaware was not made a party to this action. Therefore, defendants contend, Mr. Lopp's case of lifting the corporate veil of defendant Philips must fail because Philips did not own any New Peerless stock and had no control over that corporation at the time his cause of action arose, citing 1 Fletcher Corporations § 43, pp. 205–206, "It must be kept in mind that the control must be shown to have been exercised at the time the acts complained of took place in order that the entities be disregarded at the time." The point is well taken. If Mr. Lopp would seek to impress these subsequently formed companies with the continuing liability of his employment contract, he must show that at the time his alleged breach of contract arose the defendant company controlled the subsidiary "in-

strumentality" with which he contracted, at the time of breach. Although pursuant to the merger agreement the liability of New Peerless and Anchor of Missouri as original parent company, under the employment contract, was successively transferred, there is no evidence that at the time of the breach defendant Philips had any control over New Peerless or even Anchor of Missouri, which had gone out of existence by February 29, 1960. See State ex rel. General Mills, Inc. v. Waltner, 348 Mo. 852, 156 S.W.2d 664, 668 [6]; Majestic Co. v. Orpheum Circuit, Inc., 21 F.2d 720, 726 (C.C.A.8th, 1927); Lowendahl v. Baltimore & Ohio R. Co., 247 App.Div. 144, 287 N.Y.S. 62, 76. We rule that the trial court did not err in giving judgment as to the defendant Philips Electronics and Pharmaceuticals Industries Corporation.

■ Under the terms of the contract, Mr. Lopp had the option to renew his employment for "as long as he desires to do so." The supplemental agreement did not modify that provision, but provided that if his services upon employment at a salary should be unsatisfactory, he would have the right, "if he desires," to resume his employment upon the commission basis outlined in the original contract. Inasmuch as there was an additional consideration (the formulas and the name of Old Peerless) caused to be transferred by Mr. Lopp to New Peerless, his contract for employment is based upon something other than mutual promises of employment and services to be rendered therefor. See Harrington v. Kansas City Cable Railway Co., 60 Mo.App. 223, 228; Anno. 35 A.L.R. 1434. His contract is not terminable at will as being for an indefinite period, and is not unenforceable for lack of mutuality of obligation. Schonwald v. F. Burkart Mfg. Co., 356 Mo. 435, 202 S.W.2d 7, 14 [7, 8].

■■ For the breach of his contract Mr. Lopp would have been entitled to maintain an action for damages. He did not so choose, but elected the alternative remedy of restitution to recover the value of the benefit bestowed by him upon New Peerless by reason of the transfer of the formulas and name to it. In 5 Corbin on Contracts § 1102, p. 548, it is said, "The purpose of this remedy is the restoration of the injured party to as good a position as was occupied by him before the contract was made, without attempting to compensate him for consequential harms; the means to this end is a judgment for the equivalent in money of any performance rendered by the plaintiff and received by the defendant (or in some cases for the return of specific property)." See also Rest. Contracts § 347. Although Mr. Lopp has correctly chosen an alternative remedy for the breach of his contract, defendants have vigorously interposed the objection that he has not himself offered to credit them with the amounts of salary and commissions received by him under the contract, $46,265. The general rule is that in order to have restitution a party seeking it must tender or offer to credit that which he has received (as a benefit) under the contract. Rest. Contracts § 349; 17A C.J.S. Contracts § 439, p. 545. The reason for the general rule is stated in 5 Corbin on Contracts § 1114, p. 607, to be: "A plaintiff who recovers the full value of such performance as he may have rendered, and at the same time is allowed to retain a part performance that he had received, is thereby put in a better position than he occupied before the contract was made."

■ The burden of proof was upon Mr. Lopp to prove all of the elements of his claim for restitution, and this would include his tender or offer of credit for *all* the benefits conferred upon him by the defendants' partial performance of the contract. Or, if he would seek to excuse himself from a tender or offer of tender, on the ground that the reasonable value of his services was equal to his remuneration by way of salary and commissions, he must prove facts as would support the excuse, and submit them to the jury in an appropriate instruction. See 5 Corbin on Contracts § 1114, p. 617, where it is said, "In

order to show the amount to which he is justly entitled, the plaintiff must prove the value of services received by him and of goods received and consumed, or of any other part performance that he cannot return." The matter was dropped after the pleading that the $46,265 was for services actually rendered and was not creditable against the value of the formulas due Mr. Lopp from defendants. Mr. Lopp's proof tended in general to support the inference that his remuneration was equal to services rendered by him; but defendants' proof tended to show to the contrary. At no place in the instructions was this disputed fact submitted to the jury. This omission was prejudicial error against defendants, necessitating a new trial. Banta v. Union Pac. R. Co., 362 Mo. 421, 242 S.W.2d 34, 42 [10–12]. See also Lees v. Akshun Mfg. Co., 7 Cir., 205 F.2d 577, where an action for "rescission" (not precisely the same as "restitution," see 5 Corbin on Contracts § 1105) was brought to restore to plaintiff certain ice machine patents upon defendant's material breach of contracts. The case was remanded for further proceedings and in connection with one reason therefor (a determination of the value of the designing and supervising services rendered by plaintiff) the court said, loc. cit. 583, "Plaintiff made no offer to return any portion of the $100 per week salary paid him by defendant, Akshun. This failure may well preclude his obtaining the relief he seeks. However, it is also possible that the reasonable value of the services he rendered defendant, Akshun, exclusive of the patent assignments, was equal to the salary paid him. In such a case he would owe defendant nothing and the tender would be a useless act. This question of value is, of course, one of fact for the trial court."

The above discussed matters are determinative of this appeal.

The parties have extensively briefed other issues which we do not rule for the reason that the parties are adequately apprised thereof, and therefore such issues are not likely to recur upon retrial.

The judgment in favor of defendant Philips Electronics and Pharmaceuticals Industries Corporation is affirmed. The judgment in favor of Peerless Serum Company is reversed, and this case is ordered remanded for new trial against that remaining defendant in accordance with the trial court's alternative order.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.