[Civ. No. 1302. Fifth Dist. Mar. 31, 1972.]

RAYMOND DRZEWIECKI, Plaintiff and Appellant, v.
H & R BLOCK, INC., et al., Defendants and Appellants.

## COUNSEL

Thomas, Snell, Jamison, Russell, Williamson & Asperger and James E. LaFollette for Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel and Charles H. Brock for Defendants and Appellants.

## OPINION

**GARGANO, J.**—This litigation presents a contractual dispute between several closely related corporations, defendants in the court below, and one Raymond Drzewiecki, also known as Ray Drew, plaintiff in the court below. For convenience, the defendants will be referred to as appellants, and plaintiff will be referred to as respondent.

The essential facts are undisputed. In December 1958 respondent, a former resident of California, contacted H & R Block, Inc. in answer to an advertisement; the company was engaged in the business of preparing income tax returns for small taxpayers and was seeking "income tax preparers." As a result of the contact, respondent attended the H & R Block training session in Kansas City; after completing the program, he was employed by the company as an "income tax preparer" for the 1959 tax season at its office at Mission, Kansas, a suburb of Kansas City.

In March 1959, Richard Bloch, a founder and officer of H & R Block, Inc., asked respondent if he wanted to manage a company office yet to be opened; Mr. Bloch told respondent that almost any city was available to him as long as it had a population of over 35,000 people. Thereupon, respondent submitted a list of five or six cities for the company's consideration; he ultimately selected Fresno, a city with a population in excess of 35,000.

On April 21, 1959, respondent and H & R Block, Inc. executed the agreement which is the subject of this litigation. This agreement, hereafter referred to as the Fresno contract, contained the following pertinent provisions:

### "ARTICLES OF EMPLOYMENT

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"WHEREAS, First Party is engaged in the business of preparing income tax returns and performing bookkeeping and related services for small business, and is desirous of employing Second Party as manager of branch office (or offices) to be located in Fresno, California (hereinafter referred to as Branch Office); and

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"2. First Party hereby employs Second Party as manager of the Branch Office upon the terms and conditions hereinafter set forth.

"3. First Party agrees to assist in selecting a site for said Branch Office and to furnish all capital funds necessary to its operation. Such capital shall be employed for such items as the payment of rent, salaries, utilities, supplies, equipment and advertising costs. All outlays and expenditures in excess of $100.00 shall be made at the sole discretion, election and direction of the employer, provided however, that same shall be adequate to permit such operation without any outlay of funds by Employee.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"5. Second Party hereby accepts the position of manager of the Branch Office and covenants to abide by the terms and conditions of this Agreement in all respects.

"6. Employee shall devote such time and attention to the business as will be required for the successful operation of the business, and shall direct his best efforts to the obtaining of tax returns and bookkeeping accounts and to the servicing thereof in a professional manner and to the utmost of his ability. Minimum time under this paragraph shall be construed to mean full time from January 1 thru April 15 each year.

"          .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"8. As compensation for his services, Second Party shall be entitled to $400.00 each month, to be paid him by Employer as a draw against Employee's share of net profits only of the Branch Office, during the period of January 1 through April 30. From April 30 until January 1 if Employee devotes a major portion of his time to the office, Employee shall be entitled to draw the entire net profit of the office plus, each month, the normal expense of the office if it were closed. Any of these draws are to be considered advances against the share of the profits as set out in #9 and shall be accumulative from year to year.

"9. Employee's share of the net profits shall be 75% of such net profit for each fiscal year ending April 30. The net profit for each year shall be determined on the 30th day of April and Employee's share shall be available to Employee at any time thereafter, either in total or in monthly amounts the aggregate of which not to exceed Employee's total share.

"          .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"11. At no time during this employment with First Party nor within five (5) years after the termination thereof, shall Second Party solicit, advertise for or service, directly or indirectly, any past, current or potential accounts of First Party, nor engage directly or indirectly in any business or undertaking, whether to the capacity of owner, employee, agent or otherwise, which may be in competition with First Party, within an area of twenty-five miles (25) miles of Fresno, California, without the written permission of First Party. If Second Party shall in any wise violate the terms and conditions aforesaid, he hereby agrees to pay to First Party all proceeds or monies by him or his assigns or agents received in the course of such unauthorized action plus liquidated damages of $5,000.00.

"12. It is expressly understood and agreed that the contract shall not constitute Second Party as a partner or stockholder in the business of First Party, nor shall Second Party at any time hold himself out as a partner, nor

shall he commit First Party to any agreement, written or oral, without written authority of First Party so to do.

"13. This agreement shall be for a period of two years from the above date and thereafter shall automatically renew from year to year unless either party gives written notice of termination 90 days prior to renewal date. First Party may give notice of termination only in the case of second party improperly conducting the business. This contract would also terminate if any law were passed to make the operation of the business illegal. All supplies, equipment and fixtures of the Branch Office shall be and remain the sole property of First Party at all times.

". . . . . . . . . . . . . . . . . . ."

In April 1959 respondent and his family moved to Fresno. The branch office was scheduled to be opened January 1960, and respondent took a temporary position with a transport manufacturing company. A few months later he became concerned over his financial resources and requested H & R Block, Inc.'s permission to delay opening the Fresno office for a year. The request was denied, and respondent opened the office in January as scheduled.

In 1961, respondent, by separate agreement, was given the managership of H & R Block's branch offices in the City of Stockton and surrounding areas. During the following years he increased the number of branch offices managed by him from the original one in Fresno to a total of 23; at the trial, it was estimated the respondent's share of the net profits for the year 1969, from his Fresno area operation alone, would have been $65,000.

In 1967 H & R Block, Inc., which had expanded into a nationwide enterprise consisting of several publicly owned related corporations with more than 3,200 branch offices, determined that the compensation the organization was paying to its 250 branch office managers was excessive and unrealistic. As a consequence, appellants proposed a new form of contract substantially reducing each manager's share of the net profits realized from future growths in company business. This contract was to go into effect in January 1968 and did not affect a manager's share in the net profits of a particular branch office as to business existing at the time it went into effect.

On May 7, 1968, appellants gave respondent notice of the termination of the Stockton agreement; respondent and four other managers had refused to sign the new contract, and appellants had directed their corporate officers to terminate the preexisting contracts of all managers who had not

signed. Respondent was also notified that his operation under the Fresno agreement was restricted to the Fresno city limits; later, further restrictions were imposed on the Fresno operation.

In October 1968 respondent instituted this action in the Superior Court of Fresno County. His complaint was in eight counts and sought injunctive and declaratory relief, reformation, partition, an accounting, and damages. About two months later, on December 11, 1968, appellants notified respondent that the Fresno contract was terminated.

After issue was joined on respondent's pleadings, the cause was tried by the Honorable Donald R. Franson, sitting without a jury. Judge Franson found that both the Stockton and Fresno contracts were employment contracts and did not create a joint venture or give respondent any propriety interest in the employer's business operations and that because the Stockton contract contained a provision that it could be terminated on notice by either party, it was properly terminated by appellants. He also found that the Fresno contract employed respondent for so long as he properly conducted the employer's business and could not be terminated by appellants except for cause.[1] The judge then, inter alia, determined that the agreement included the City of Fresno and surrounding areas, that appellants did not have cause to terminate the employment, that 10 years was a reasonable period of time for the employment to have continued had it not been wrongfully terminated, that respondent would have earned $60,000 per year during that period but instead would probably earn only $10,000 a year and that he was damaged by the wrongful termination in the sum of $386,086.75. Judgment was entered according to these findings, and all parties appealed.

We consider first the appellants' appeal.

Appellants' main contention for reversal is stated concisely and to the point. They argue that the Fresno contract was in actuality a contract of permanent employment, and that because there was no evidence to show that it was based upon some consideration other than the services to be rendered, the agreement was terminable at the will of either party. Appel-

---

[1]The court made the following findings:

"II Said contract does not call for permanent employment, but rather employment for only as long as a certain state of facts exists, i.e., that the employee properly conducts the business.

" . . . . . . . . . . . . . . . .

"IV That said employment contract is by its terms definite and subject to termination upon the happening of an objective condition rather than a subjective determination by the defendants, the objective standard to be applied being that of reasonableness."

lants rely, primarily, on the dicta of *Ruinello* v. *Murray,* 36 Cal.2d 687, 689-690 [227 P.2d 251]. In that case Mr. Justice Traynor wrote: "Ordinarily a contract for permanent employment, for life employment, for so long as the employee chooses, or for other terms indicating permanent employment, is interpreted as a contract for an indefinite period terminable at the will of either party, unless it is based on some consideration other than the services to be rendered."

It is reasonable to assume that the trial judge did not uphold respondent's claim that the Fresno contract was not terminable at appellants' will on the theory that the agreement was based upon some consideration other than respondent's services; though requested to do so, the court refused to make a specific finding on the consideration issue; the court also emphatically stated that the contract did not "call for permanent employment, but rather employment for only as long as a certain state of facts exists, i.e., that the employee properly conducts the business." We shall dispose of appellants' contention with this premise in mind.

■ The authorities are in general agreement with the proposition that contracts which purport to give a person permanent employment through the use of such phrases as "for life," or "for so long as the employee chooses," or "so long as the employee's work is satisfactory," with nothing more, are for an indefinite period and are terminable at the will of either party. Such agreements, however, are not per se odious or tainted with illegality; they are deemed merely to be at variance with general usage and sound business policy, because they are "in practical effect, unilateral undertakings by the employer to provide a job for so long as the employee wishes to continue in it," with no corresponding obligation imposed upon the employee. (9 Williston on Contracts (3d ed.) § 1017, p. 131.) Nonetheless, a few cases have confused form with substance and seem to hold that a contract purporting to give an employee permanent tenure is always terminable at the will of the employer unless it is based upon some consideration other than the employee's services. The fallacy of this reasoning was recognized and discussed in *Littell* v. *Evening Star Newspaper Co.,* 120 F.2d 36, 37. In that case the United States Court of Appeals for the District of Columbia had this to say: ". . . Some of the courts have reasoned . . . that, to prove a contract of permanent employment, *two* considerations *must* be shown; that is, a consideration in addition to the services to be performed; and that in the absence of two considerations there can be no such contract. This misconception results from mistaking the form for the substance. If it is their purpose, the parties may enter into a contract for permanent employment—not terminable except pursuant to its express terms—by stating clearly their intention to do so, even though no

other consideration than services to be performed is expected by the employer or promised by the employee. The meaning of the cases previously referred to is that where no such intent is clearly expressed and, absent evidence which shows other consideration than a promise to render services, the assumption will be that—even though they speak in terms of 'permanent' employment—the parties have in mind merely the ordinary business contract for a continuing employment, terminable at the will of either party."

California adheres to the general rule that an employment contract purporting to establish a permanent employer-employee relationship through the use of oblique language is terminable at the will of either party unless it is based upon some consideration other than the employee's services. (*Lord* v. *Goldberg,* 81 Cal. 596 [22 P. 1126]; *Ruinello* v. *Murray, supra,* 36 Cal.2d 687, 689, 690; *Ferreyra* v. *E. & J. Gallo Winery,* 231 Cal.App. 2d 426 [41 Cal.Rptr. 819]; *Levy* v. *Bellmar Enterprises,* 241 Cal.App.2d 686 [50 Cal.Rptr. 842].) But, we are not aware of any California decision which holds, squarely, that a contract for permanent type employment is terminable at the will of the employer if the employer has, by express language or clear implication, foreclosed his right to terminate except for cause. If anything, the *Ruinello* opinion, *supra,* upon which defendant relies, emphatically suggests that the California Supreme Court would have reached the opposite conclusion if that precise question had been presented to the court for its consideration. Mr. Justice Traynor said that ordinarily such contracts are interpreted as contracts for an indefinite period unless based upon some consideration other than the services to be rendered. He also said that since the plaintiff in that case had not alleged such consideration or other terms indicating a contrary intention, it could not be concluded that the employment he gave up was "not at the will of either party." The eminent legal scholar must have assumed that under appropriate circumstances employment contracts are not terminable at the will of either party even though they are not based upon some consideration other than the employee's services.

It is fundamental that when construing contracts involving substantial employment rights, courts should avoid mechanical and arbitrary tests if at all possible; employment contracts, like other agreements, should be construed to give effect to the intention of the parties as demonstrated by the language used, the purpose to be accomplished and the circumstances under which the agreement was made. (*Masterson* v. *Sine,* 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561]; *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage, etc. Co.,* 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; *Delta Dynamics* v. *Arioto,* 69 Cal.2d 525 [72 Cal.Rptr. 785, 446 P.2d 785].)

We embrace the prevailing viewpoint that the general rule is a rule of construction, not of substance, and that a contract for permanent employment, whether or not it is based upon some consideration other than the employee's services, cannot be terminated at the will of the employer if it contains an express or implied condition to the contrary. (53 Am.Jur.2d, Master and Servant, § 32, pp. 107, 108; 135 A.L.R. 646.) The case of *Littell* v. *Evening Star Newspaper Co., supra,* 120 F.2d 36, focuses on the real issue, expounds the sound viewpoint and the court's rationale should be followed in this state.

■ Applying ordinary rules of construction to the Fresno contract, it is patent that H & R Block, Inc. intended to engage respondent to manage its branch offices in Fresno for so long as he managed the offices in a competent, profitable and efficient manner. It is also patent that the company intended to foreclose its right to terminate the employment except for cause.

First, respondent was not paid a fixed salary for a specified service; he was required, for the initial two-year period at least, to invest his time and effort in the management of his employer's business in virgin territory in return for a substantial share of the net profits if and when the business began to operate on a profitable basis; the contract was not an employment contract in the conventional sense nor can it be said that it was a unilateral undertaking by H & R Block, Inc. to provide a job for respondent for so long as he wished to continue. It was, in the broad sense, a joint undertaking for the mutual benefit of both the employer and the employee.

Second, at the time the contract was signed, Richard Bloch told respondent that the operation during the first year would probably lose money, that in the second year the business might break even, and that respondent should start making a profit by the third year. Mr. Bloch also told respondent that they would be "like partners," that the business was his and he could "sell it, trade it" or "do with it" as he pleased. The contract contemplated a long-term relationship.

Third, the agreement did not use such oblique terms as "for life," or "for so long as the employer chooses," or "so long as the employee's work is satisfactory." It explicitly stated that the employment was automatically renewable on a year to year basis unless either party gave 90 days' written notice of intention to terminate, and that the employer could give notice of such termination "only in case the second party improperly conducted the business." In addition, the contract stated that the employment "would also terminate if any law were passed to make the operation of the business

illegal." If the contract was terminable at the employer's will, as appellants now assert, these provisions, which were inserted in a contract prepared by H & R Block's own lawyer, were redundant and useless.

"[I]t is the instrument itself that must be given effect"; we hold that the Fresno contract was designed to accomplish a special purpose and that its duration was to be for so long as the employee competently conducted the employer's business, and it could not be terminated by the appellants except for cause. (*Parsons* v. *Bristol Development Co.*, 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) If we were to hold otherwise, a perfidious employer could entice a talented employee to leave a lucrative position on the express promise that he would share in the business profits and that the employment would not be terminated except for cause, and then discharge the employee as soon as the business began to operate profitably. We would also encourage such an employer to attempt to prevent the employee from engaging, either directly or indirectly, in any similar business within the same general area.[2] This unjust result was never intended or contemplated by any of the authorities upon which appellants rely.

■ Appellants next contend that even if the Fresno contract were not terminable at the will of either party, the duration of respondent's employment thereunder was for a reasonable period of time. They argue that almost 10 years had elapsed before the contract was terminated, and by projecting the damages over an additional 10-year period, the court, in essence, found that 20 years was a reasonable period of employment; and that such a finding is erroneous as a matter of law.

The court did not find that 20 years was a reasonable period for the duration of respondent's employment under the Fresno contract. As we have repeatedly stated, Judge Franson found that respondent's employment was for so long as he managed the employer's business in a competent and profitable manner. The judge then took into consideration respondent's "physical condition, his age, his propensity for hard work, his expertise in managing defendants' offices, the profit history of his operation, the foreseeability of the continued future demand for tax return service to small taxpayers" and determined that it was reasonably certain that respondent would have competently and profitably performed his managerial services for an additional 10 years after the contract was wrongfully terminated. Because these findings are supported by substantial evidence, we do not disturb them. ■ It is not the function of the appellate court to weigh or resolve conflicts in the evidence or judge the credibility of witnesses. Our

[2]See Paragraph 11 of the Fresno agreement.

function "begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached" by the trier of fact. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].)

Appellants' remaining contention that they had cause to terminate the Fresno contract because respondent instituted this action in the court below does not warrant prolonged discussion. The appellants had made the assertion that they could terminate both contracts at will, proceeded to terminate the Stockton agreement and substantially impaired respondent's activities under the Fresno contract; they had adamantly taken the position that respondent had no contractual rights of any kind. The contract was susceptible to the interpretation that there was more than an employment relationship; under these circumstances, the respondent had the right to resort to the judicial process to protect his interests.

We summarily dispose of respondent's appeal; he asserts that the court erred in not taking into consideration future growth in business and in net profits in determining respondent's damages. However, there was evidence that the future growth in business and, particularly, the net profits, would be affected by inflation, appellants' policy not to raise prices, and the "flattening out of the growth rate" after the tenth year of operation. Because this evidence was before the trial court, we must assume that the judge considered it. We find no error as to the damages assessed.

The judgment is affirmed.

Stone, P. J., and Brown (G. A.), J., concurred.

A petition for a rehearing was denied April 28, 1972, and the petition of defendants and appellants for a hearing by the Supreme Court was denied June 22, 1972.