**Richard B. PANTHER, Plaintiff–Appellant,**

v.

**MR. GOOD–RENTS, INC., Defendant–Respondent.**

**No. WD 43990.**

Missouri Court of Appeals, Western District.

Oct. 15, 1991.

Jerome F. Waterman, Houlehan and Waterman, Kansas City, for appellant.

Gary J. Brouillette, Michael J. Plambeck, Rose, Brouillette & Shapiro, P.C., Kansas City, for respondent.

Before BERREY, P.J., and ULRICH and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

Richard B. Panther appeals from the trial court's order granting summary judgment to Mr. Good–Rents, Inc. The sole issue presented on appeal is whether the trial court erred in sustaining Good–Rents' motion for summary judgment upon the court's finding that the employment contract, which failed to specify the duration of employment, was terminable at will. Panther contends he furnished independent and additional consideration in the form of a covenant not to compete, thereby making the employment contract an enforceable, durable term of employment within an exception to the at will employment doctrine.

The judgment is affirmed.

The pertinent facts are as follows:

In August, 1988, Panther and the principals of Good–Rents began discussions about starting a check-cashing business in which Panther would become managing director and chief executive officer. Thereafter, Good–Rents proposed to Panther terms of employment as set out in an employment letter which Panther signed on or around November 28, 1988.[1] The employment letter did not designate a term of years or any other definite period of employment but did provide a non-compete clause. Panther also signed an additional "Non–Compete and Trade Secrets Agreement", dated January 16, 1989.

In February, 1989, Panther met with the Board of Directors of Good–Rents to discuss his performance. The president of Good–Rents told Panther that the Board of Directors had recommended that his duties be modified. Thereafter, Panther advised employees of Good–Rents he would not work for Good–Rents because the original employment letter sent November 10, 1988, and signed by Panther on or around November 28, 1988, had been breached. Good–Rents' attorney sent a letter to Panther dated March 1, 1989, stating that it was Good–Rents' understanding that Panther had terminated his employment because he was unwilling to maintain his employment under Good–Rents' modification of his employment duties.

Panther then filed his Petition for Breach of Contract on March 11, 1989, claiming a material breach of the contract which denied him additional compensation in the form of salary, bonuses and equity ownership in the check-cashing venture, damaging Panther substantially. Good–Rents filed its Answer, admitting the employment letter as well as the non-compete agreement. Panther, during discovery, admitted that the employment letter did not designate any term of years or any other time measurement as to the length of the contract and also admitted he signed a non-compete agreement. Good–Rents raised an affirmative defense asserting that Panther's employment was at will and that Panther's employment contract with Good–Rents contained neither a term of employment nor a requirement that Panther could only be dismissed for cause, thereby denying to Panther a cause of action for discharge. Good–Rents then filed its motion for summary judgment which was sustained by the trial court on September 13, 1990, specifically finding the employment contract to be terminable at will. The trial court further found, as reflected by the order, that the signing of a non-compete agreement does not constitute independent and additional consideration required by the exception to the at will employment doctrine. This timely appeal followed.

On appeal from a summary judgment, this court is required to view the record in the light most favorable to appellant. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984). "Summary judgment is appropriate in the first instance only when no theory within the scope of the pleadings, depositions, admissions and affidavits filed would permit recovery and the moving party is entitled to judgment as a matter of law." *Id.*

Missouri courts have long adhered to the employment at will doctrine. The

---

1. See Appendix A setting out full text of employment letter.

Missouri Supreme Court held that, "[u]nder Missouri's employment at will doctrine an employer can discharge—for cause or without cause—an at will employee who does not otherwise fall within the protective reach of a contrary statutory provision and still not be subject to liability for wrongful discharge." *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988) (quoting *Dake v. Tuell*, 687 S.W.2d 191, 193 (Mo. banc 1985)). Further, an employment contract for an indefinite period of time shall be treated as one terminable at will. *Smith v. Geo. H. Weyer, Inc.*, 224 S.W.2d 543 (Mo.App.1949). In *Smith*, the employee was provided a monthly salary, a daily expense account, and a year-end commission based upon the amount of goods sold which exceeded a set amount. *Smith*, 224 S.W.2d at 544–46. The *Smith* court found the employment to be at will. *Id.*

█ In *Anselmo v. Manufacturers Life Ins. Co.*, 595 F.Supp. 541, 547 (W.D.Mo. 1984), the court held that "an agreement which merely sets out levels of salary over a period of years does not amount to a contractual undertaking to employ that person for those years." The court further held that if an employment contract does not state a definite term, absent a contrary statutory provision, the employer may discharge an employee at any time regardless of whether there is cause. *Id.* at 546. The rule that an employment contract which is of an indefinite duration is one terminable at will was also stated in *Haith v. Model Cities Health Corp.*, 704 S.W.2d 684 (Mo. App.1986). An unstated duration employment contract allows for the termination of the employment at any time, by either party. *Id.*

█ In the instant case, no writing or other evidence sets forth any language which would provide a definite period of employment between Panther and Good–Rents. Nor is there any indication that the parties intended the employment letter to be anything other than a contract for at will employment. Indeed, Panther admitted, in Good–Rents' request for admissions, that the employment letter did not desig-nate any definite period of time in which the employment was to last. Moreover, the paragraph discussing non-competition in the employment letter specifically provides that termination may be voluntary or involuntary. Thus, given the fact the employment contract of Panther and Good–Rents has no stated duration for employment, it appears either party could terminate the relationship at any time, making the employment relationship at will.

█ Missouri does, however, recognize an exception to the employment at will doctrine. The exception provides that if the employment contract lacks a definite term, the employee may be able to enforce the contract if independent and additional consideration was transferred to the employer. *Superior Concrete Accessories, Inc. v. Kemper*, 284 S.W.2d 482, 491 (Mo. 1955). Panther contends that the execution of a contract not to compete for an extended period of time upon termination, either with or without cause, is adequate independent and additional consideration that supports enforcement of a written contract of employment when no specific duration is stated in the contract.

Missouri case law does shed some light upon what is to be considered sufficient independent and additional consideration. One case that is particularly instructive on this point is *Schonwald v. F. Burkart Mfg. Co.*, 356 Mo. 435, 202 S.W.2d 7 (1947). In *Schonwald*, the Missouri Supreme Court had before it a contract of employment of a salesman that did not contain a specific term of employment and, thus, the agreement was unenforceable. *Id.* 202 S.W.2d at 14–15. In addition to furnishing employment services as a salesman, however, the employee had turned over to the employer a certain process by which shoe soles could be manufactured. *Id.* at 14. That relinquishment was the independent and additional consideration necessary to make the contract sufficiently definite and certain. *Id.* Thus, the independent and additional consideration of supplying the manufacturer with the process by which to make the soles prevented the employment contract from being terminable at will. *Id.* at 15.

■ Missouri case law further provides that the independent and additional consideration necessary to make an at will employment contract terminable for cause must be of a significant interest. *Schonwald*, 202 S.W.2d at 14; *Lopp v. Peerless Serum Co.*, 382 S.W.2d 620, 621–22 (Mo. 1964). In *Lopp*, the employment contract provided for a three year term and option to renew the contract and the employee transferred property in the form of formulas for veterinarian pharmaceutical products, ideas and the company name, which constituted additional and independent consideration to take employment contract out of at will. *Id.* at 622. The contract included more than the mutual promises of employment and the corresponding service. *Id.* at 626. As such, the contract was not terminable at will for being of an indefinite period. *Id.*

Panther contends that his five year covenant not to compete serves as such additional consideration to transform an at will employment agreement into a contract terminable only for cause. Although this specific matter has not been resolved by Missouri courts, the converse situation has been addressed.

In *Reed, Roberts Associates, Inc. v. Bailenson*, 537 S.W.2d 238 (Mo.App.1976), the court found sufficient consideration supported the non-competition agreement signed prior to employment, despite the employment being at will. The consideration was the employee's agreement to perform services as an employee and not to compete with the employer for three years after termination of employment, and the employer's agreement to employ defendant and to pay him the agreed upon salary. Thereafter, the employee also executed two subsequent non-compete agreements during his employment, and the court held that in an employment contract terminable at will, "[a] continuance by employee in the employment of employer where he is under no obligation to remain and the continuance by the employer of the employment where continuance is not required supplies adequate consideration for a secondary contract [non-compete agreement]." *Id.* at 241.

*Deck & Decker Personnel Consultants, Ltd. v. Pigg*, 555 S.W.2d 705 (Mo.App.1977), is another case enforcing a covenant not to compete. *Deck*, citing *Sherman v. Pfefferkorn*, 241 Mass. 468, 135 N.E. 568, 569 (1922), holds that "a contract of employment containing a covenant not to compete does not lack mutuality when the employer and the employee stand on equal footing with respect to its termination, i.e., where the employment is terminable at will by either party...." *Deck*, 555 S.W.2d at 707.

An analysis of the holdings in *Reed* and *Deck* reveals the significance of the fact that the employment was at will, rather than under a contract of employment for a definite period. The courts found the mutual desire of continued employment supplied the consideration from both employer and employee for the non-compete agreement. It is not a logical extension of the courts' holding in *Reed* and *Deck* that the covenant not to compete should cause the employment contract to be terminable only for cause rather than at will. Such a ruling would eliminate the consideration for the covenant not to compete.

As encouragement to this Court for the adoption of his position, Panther contends that California and Indiana recognize that a restrictive covenant against competition in a written employment contract can furnish independent and additional consideration. *Drzewiecki v. H & R Block, Inc.*, 24 Cal.App.3d 695, 101 Cal.Rptr. 169 (1972); *Stack v. Allstate Ins. Co.*, 606 F.Supp. 472 (S.D.Ind.1985). California adheres to the general rule that an employment contract professing to create a permanent relationship between employer and employee by oblique language is nevertheless terminable at will, unless it is based upon some other consideration. In *Drzewiecki*, however, the language of the employment agreement clearly stated the employer's intention to engage the employee so long as he performed his duties in a competent, profitable and efficient manner, and to terminate him only for cause. In *Stack*, the Indiana court notes that it was a case of first impression addressing the question of

whether a covenant not to compete was sufficient independent consideration to take the employment contract out of the at will doctrine, but decides the case upon its finding that the employment contract contained specific provisions limiting the employer's right to terminate the contract at will. The Court finds both the California and Indiana cases are factually distinguishable.

■ Missouri case law further states that services and obligations usually associated with new employment will not be deemed separate and additional consideration. *Superior Concrete Accessories v. Kemper*, 284 S.W.2d at 491. Even though Kemper was required to establish a warehouse sales organization and contribute to Superior Concrete's business, this was pursuant to the employment contract and was not separate and additional consideration that would cause the contract to be terminable only for cause. In *Rosatone v. GTE Sprint Communications*, 761 S.W.2d 670, 671–72 (Mo.App.1988), the court found that resignation from a previous employer to accept new employment is insufficient to constitute independent and additional consideration to remove the employee from an employee at will status.

■ At the time of Panther's employment by Good–Rents, he had no experience with a check-cashing business. His previous employment was as a licensed general life insurance agent. There was no contention by Panther that he brought to Good–Rents any trade secrets, formulas, products or other property interest. The noncompete agreement set forth in the facts at bar does not rise to the same level of a property interest or other significant or substantive rights as set forth in *Schonwald* or *Lopp, supra.* Thus, Panther's signing of a non-compete agreement does not constitute independent and additional consideration necessary to take the employment contract out of the at will employment doctrine. The trial court was correct in entering its order sustaining Good–Rents' motion for summary judgment.

The judgment of the trial court is affirmed.

All concur.

## APPENDIX A

Mr. Richard Panther
Re: Check Cashing Venture
Dear Dick:

After our conversation in my office last week, I indicated to you that I would put together a letter of agreement with regard to your compensation and equity participation in the new check cashing venture.

It was my understanding that we would begin by compensating you $3,000.00 per month ($36,000.00 per year) to be the managing director and chief executive officer of the check cashing venture.

In addition, it was my understanding that you would be compensated on an incentive basis as follows:

1. You will receive ten percent (10%) of the first $200,000.00 of net income before taxes achieved by the check cashing venture;

2. You will receive eight percent (8%) of the second $200,000.00 of net income before taxes achieved by the check cashing venture;

3. You will receive six percent (6%) of the third $200,000.00 of net income before taxes achieved by the check cashing venture;

4. You will receive five percent (5%) of the fourth $200,000.00 of net income before taxes achieved by the check cashing venture.

Anything beyond net income before taxes achieved in the amount of $800,000.00 would accrue to you at the rate of five percent (5%) with a maximum cap to be received by you (inclusive of salary) of $500,000.00.

You will receive five percent (5%), in the form of "phantom stock", of the ownership of the check cashing venture and this will be available to you should you complete your service as chief executive officer of the check cashing venture and remain with

us up through the time of sale, if any, of that venture.

In other words, should the check cashing venture ever be sold, as long as you are still a chief executive officer of that check cashing venture, you would receive five percent (5%) of the net receipts received from the sale of the check cashing venture.

Additionally, we discussed the fact that we would review annually your compensation in the form of salary.

Your salary would be increased from its present level by fifty percent (50%) of the net bonus that you have received under the aforementioned bands of net income. For example, if you had achieved salary in the first year of $36,000.00 and also received $20,000.00 of incentive bonus (10% of the first $200,000.00 of net income before tax), your salary commencing with the next full year of your employment as chief executive officer would be $46,000.00 ($36,000.00 plus one half of the $20,000.00 incentive bonus), until reviewed in the subsequent year for any other adjustment.

You would also agree to enter into a non-compete agreement with us under terms and conditions mutually agreed upon but which in general form would include your not competing in the Kansas City metropolitan area for a period of five (5) years from and after your discharge, termination (either voluntary or involuntary) or other reason for leaving the employ as chief executive officer of the check cashing venture.

Although I am not sure that we fully discussed what might happen with regard to your equity in the check cashing venture if you died, I would think that we would want to complete some type of insurance program on your life or enter into some type of an agreement whereby certain proceeds from the insurance coverage available, or otherwise, would be paid to your wife.

Dick, I know that this is rather sketchy, but if you believe that it correctly summarizes our conversation, I would appreciate your signing at the appropriate spot at the bottom of this letter so that we can immediately commence preparations for you becoming the chief executive officer of the check cashing operation.

If you have any questions whatsoever, please give me a call at your earliest convenience.

Sincerely,

Gary J. Brouillette

cc: Mr. Gregory Smith

Mr. Don Early

I have read and understood the general outline of the compensation features available to me as chief executive officer of the check cashing venture to be entered into and do hereby consent thereto.

/s/ Richard Panther

Richard Panther